22408

Gwendolyn A. LUDWICK, Petitioner, v. THIS MINUTE OF CAROLINA, INC., and Sheldon Solomon and Frances Solomon, Respondents.

(337 S. E. (2d) 213)

Supreme Court

*Paul E. Tinkler* of *Wallace & Wallace*, Charleston, and *George B. Bishop*, Moncks Corner, *for petitioner.*

*Pledger M. Bishop, Jr.*, and *David A. Soderlund*, Charleston, *for respondents.*

Heard Sept. 25, 1985.

Decided Nov. 18, 1985.

CHANDLER, Justice:

Petitioner, Gwendolyn A. Ludwick (Ludwick), an at-will employee, commenced this action for actual and punitive damages upon a cause of action in tort alleging that her discharge was in violation of public policy.

She petitions this Court from the decision of the Court of Appeals which affirmed a nonsuit granted by the Circuit Court in favor of Respondents, This Minute of Carolina, Inc. (Carolina), Sheldon Solomon and his wife, Florence Solomon. *Ludwick v. This Minute of Carolina, Inc.*, 283 S. C. 149, 321 S. E. (2d) 618 (Ct. App. 1984).

We reverse and remand.

## FACTS

The essential facts are not in dispute.

Ludwick, a seamstress, worked as an at-will employee in Carolina's sewing plant at Summerville. The Solomons were plant managers.

While so employed Ludwick was served with a subpoena to appear before the South Carolina Employment Security Commission (ESC) at a hearing in Walterboro. Shortly thereafter she was advised by the Solomons that if she obeyed the subpoena she would be fired.

Ludwick honored the subpoena, testified at the hearing and, upon returning to her job at Carolina on the following day, was fired.

She thereafter filed this action. Upon completion of her evidence at trial Carolina was granted a nonsuit, the trial judge holding that neither statutory nor decisional law in South Carolina has recognized a public policy exception to the employment at-will doctrine.

## ISSUE

The single issue presented is whether South Carolina shall recognize a cause of action for discharge of an at-will employee, where the discharge constitutes a violation of public policy.

## AT-WILL EMPLOYMENT

Employment at-will, a court created doctrine, was first clearly articulated in an 1877 treatise, *Master and Servant.* Its author, Professor H. G. Wood, is credited with formulating the "American rule" that, where an employment contract is indefinite as to its duration, the employer may discharge employees for good cause, no cause or even cause morally wrong.

The termination at-will doctrine represents a departure from the English common law rule that employment contracts for indefinite periods were presumed to extend for one year, absent termination for cause.

Legal scholars and opinion writers agree that the doctrine, if not expressly created to subserve the laissez-faire climate of the late 19th century, has had the effect of doing so.

While the doctrine is cast in mutuality, affording to employee as well as employer the right of at-will termination, it cannot be seriously contended that, in reality, it impacts with equal force. As pointed out by Chief Judge Sanders in *Ludwick, supra,* 321 S. E. (2d) at 620, it assures equality to

the employee as does the law which forbids the rich as well as the poor to sleep under bridges.

Our Court first embraced the doctrine in the 1936 case of *Shealy v. Fowler*, 182 S. C. 81, 188 S. E. 499. It has been followed in a line of cases involving discharge of at-will employees under varying circumstances. *Weber v. Perry*, 201 S. C. 8, 21 S. E. (2d) 193 (1942); *Orsini v. Trojan Steel Corp.*, 219 S. C. 272, 64 S. E. (2d) 878 (1951); *Gainey v. Coker's Pedigreed Seed Co.*, 227 S. C. 200, 87 S. E. (2d) 486 (1955); *Hudson v. Zenith Engraving Co., Inc.*, 273 S. C. 766, 259 S. E. (2d) 812, (1979); *Ross v. Life Ins. Co. of Virginia*, 273 S. C. 764, 259 S. E. (2d) 814 (1979); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 276 S. C. 284, 278 S. E. (2d) 607 (1981); *Raley v. Darling Shop of Greenville, Inc.*, 216 S. C. 536, 59 S. E. (2d) 148 (1950).

Within the past 25 years there has been a significant turning away from strict allegiance to the doctrine in courts throughout the United States. *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N. E. (2d) 425 (1973); *Nees v. Hocks*, 272 Or. 210, 536 P. (2d) 512 (1975); *Petermann v. International Brotherhood of Teamsters*, 174 Cal. App. (2d) 184, 344 P. (2d) 25 (1959); *Kelsay v. Motorola, Inc.*, 74 Ill. (2d) 172, 23 Ill. Dec. 559, 384 N. E. (2d) 353 (1978); *Palmateer v. International Harvester Co.*, 85 Ill. (2d) 124, 52 Ill. Dec. 13, 421 N. E. (2d) 876 (1981); *Darnell v. Impact Industries, Inc.*, 119 Ill. App. (3d) 763, 75 Ill. Dec. 335, 457 N. E. (2d) 125 (1983); *Parnar v. American Hotels, Inc.*, 65 Haw. 370, 652 P. (2d) 625 (1982); *Thompson v. St. Regis Paper Co.*, 102 Wash. (2d) 219, 685 P. (2d) 1081 (1984); *Reuther v. Fowler and Williams, Inc.*, 255 Pa. Super. 28, 386 A. (2d) 119 (1978); *Sventko v. Kroger Co.*, 69 Mich. App. 644, 245 N. W. (2d) 151 (1976); *Sides v. Duke Hospital*, 74 N. C. App. 331, 328 S. E. (2d) 818 (1985); *Brockmeyer v. Dun & Bradstreet*, 113 Wis. (2d) 561, 335 N. W. (2d) 834 (1983); *Harless v. First National Bank*, 162 W. Va. 116, 246 S. E. (2d) 270 (1978); *Wiskotoni v. Michigan National Bank-West*, 716 F. (2d) 378 (6th Cir. 1983).

Language in recent opinions of this Court and our Court of Appeals reflects both an awareness of this erosion and the likelihood that the doctrine will be reviewed in an appropriate South Carolina case. *Hudson, supra; Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 283 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984). Such a case is before us here.

## RECENT LIMITATIONS UPON
## THE DOCTRINE

Common to the decisions of all jurisdictions which limit or modify the termination at-will doctrine is the plaintiff's burden to establish that the discharge contravenes a clear mandate of *public policy.*

The principle involved is more easily stated than judicially applied. The difficulty rests in determining a precise definition of the expression "public policy." Hence, the public policy exception has been extended by some courts to particular job terminations not recognized by others.

In the 1959 seminal case of *Petermann, supra,* plaintiff alleged that he was discharged for testifying truthfully under oath before a California legislative committee, after having been instructed by his employer's secretary-treasurer to testify falsely.

In holding that a cause of action in tort was stated the California Court of Appeals cites the penal code, Section 118 of which makes perjury a crime, as a reflection of the state's public policy.

> However, in order to more fully effectuate the state's declared public policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury. To hold otherwise would be without reason and contrary to the spirit of the law.

*Petermann,* 344 P. (2d) at 27.

In *Sides, supra,* the same result as in *Petermann* was reached by the North Carolina Court of Appeals in a perjury-related discharge. Prior to her deposition, plaintiff, a Duke University Hospital nurse, was advised by Hospital doctors and Duke attorneys "that she should not tell all that she had seen relating to Dr. Down's treatment; . . . that if she did so she 'would be in trouble.' " Despite the warning she testified fully and truthfully. Subsequently, she was fired. She filed suit, which included a cause of action for wrongful discharge in violation of public policy.

The *Sides* court reaffirmed the employer's right to terminate at-will employment for arbitrary, irrational or no rea-

son but not, however, for an unlawful reason or purpose that contravenes public policy.

> An at-will prerogative without limits could be suffered only in an anarchy, and there not for long — it certainly cannot be suffered in a society such as ours without weakening the bond of counter balancing rights and obligations that holds such societies together. Thus, while there may be a right to terminate a contract at-will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Sides,* 328 S. E. (2d) at 826.

In *Wiskotoni, supra,* the plaintiff was employed as a branch bank manager. Pursuant to subpoena he appeared before his county grand jury. Subsequently terminated, he alleged in a retaliatory discharge action that the reason for his termination was his having been served with the subpoena.

The U. S. Sixth Circuit Court of Appeals, applying Michigan's recognition of the public policy exception, affirmed a District Court award of damages.

> Witnesses are compelled to appear before the grand jury and may be punished for failure to appear and to testify. Mich. Comp. Laws Sections 767.5, 767.19c. ... these legislative statements of public policy clearly imply the existence of a cause of action for wrongful discharge where the reason for the discharge is that the employee has been subpoenaed to appear and testify before a grand jury.

*Wiskotoni,* at 383.

## OUR DECISION

The doctrine of termination at-will remains the law of this state. However, today we recognize an exception.

Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises.

Here, the subpoena served upon Ludwick was issued pursuant to S. C. Code Ann. Section 41-29-210 (1976) which provides a criminal penalty for failure to obey. She was confronted with the dilemma of choosing between her livelihood, on the one hand, and obedience to the law of the state, on the other.

We hold that the public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law. To hold otherwise would sanction defiance of the legal process legislated by the General Assembly.

In a nation of laws the mere encouragement that one violate the law is unsavory; the threat of retaliation for refusing to do so is intolerable and impermissible.

The rationale expressed in *Petermann, Sides* and *Wiskotoni* applies here. The public policy of South Carolina is manifestly reflected in the penal statute with which Ludwick was compelled to comply.

## CONCLUSION

Both the trial judge and Court of Appeals correctly applied the law governing at-will employment prior to our recognition today of the public policy exception.

Courts of other jurisdictions which recognize the exception also acknowledge the peril that an outpouring of vexatious and frivolous litigation may be spawned by modification of the doctrine. Beyond that is a common concern that the employer not be unduly fettered in exercising his rightful prerogative to select employees.

In sharing these same concerns we emphasize that a cause of action for wrongful discharge of an at-will employee shall exist only where the alleged retaliatory discharge constitutes a clear violation of a mandate of public policy.

## PROSPECTIVE APPLICATION

Our modification of the termination at-will doctrine, as set forth in this opinion, applies only to this case and to

those causes of action arising after the filing of this opinion, November 18, 1985.

Reversed and remanded.

NESS, C. J., and GREGORY, HARWELL and FINNEY, JJ., concur.