846 F.2d 69
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dawson ALEXANDER, Plaintiff-Appellant,
v.
Michael MCGUFFIN, Chief of Police of the City of
Westminster, David G. Johnson, Mayor of the City of
Westminster, Vera M. Duke, Ralph Cheek, Jim M. Smith, Lois
J. McCarley, Lawton Burton; Sammy Dixon; City Council
Members, all in their official capacities, Defendants-Appellees.
 No. 87-2627.
 United States Court of Appeals, Fourth Circuit.
 Argued April 7, 1988.
Decided May 6, 1988.
 
 Stephen John Henry for appellant.
 Cary Calhoun Doyle (J. Victor McDade, Doyle & O'Rourke on brief) for appellees.
 Before K.K. HALL, MURNAGHAN, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Dawson Alexander was fired from the Westminster, South Carolina police department after he took umbrage at two misconduct warnings and showed up at a city council meeting to complain.
 
 
 2
 On May 20, 1985, Alexander, an officer with the Westminster, South Carolina police department, returned from medical leave and was presented with written warnings for failing to patrol Main Street on foot as ordered and for spending too much time in City Hall when not on official police business. The warnings were dated April 24, 1985; on that date, Alexander was on a leave of absence for medical reasons. The warnings were for conduct before Alexander went on leave.
 
 
 3
 On May 21, 1985, Alexander met with the police committee of the City of Westminster to discuss the warnings. The committee is made up of Police Chief McGuffin and two city councilmen, Ralph Cheek and Jim M. Smith. Later that evening, Alexander showed up at the monthly City Council meeting and asked to address the council.
 
 
 4
 The council went into executive session to discuss personnel matters in order to hear Alexander; afterwards, the council announced that it had agreed to provide Alexander with a city personnel manual, as he had requested. (The police chief testified later that Alexander had always had easy access to a copy of the manual and had frequently consulted it in his presence.) The council then voted unanimously to fire Alexander from the police department. On May 22, Alexander was given a letter terminating his employment and waiving the two week notice period. The letter stated that he was being terminated "for insubordination in failing to carry out orders given by your direct supervisor. Further, your attitude is undesirable." According to Chief McGuffin, who signed the termination letter, Alexander's job was not in jeopardy until he showed up at the council meeting.
 
 
 5
 After his termination, Alexander met with Chief McGuffin, his direct supervisor, as provided under the grievance procedures in the city personnel manual. He also requested and received a hearing before the city's grievance committee. In that hearing, Alexander was represented by counsel, who was allowed to present evidence and cross-examine witnesses for the city. The grievance committee did not have the power to reverse the termination decision of the city council, but it could and did criticize the council's action and urged reconsideration. On September 24, 1985, the city council reviewed the grievance committee report and then reaffirmed its decision to terminate Alexander's employment.
 
 
 6
 In December, 1985, Alexander filed suit in federal district court against the city police chief, the mayor, and city council members. The complaint set forth three causes of action: retaliation in violation of the First Amendment, denial of due process, and wrongful discharge (a pendent state claim). Summary judgment was granted for all the defendants. Alexander appealed.
 
 I.
 
 7
 On appeal, Alexander argues that he should be able to proceed with his claim that the defendants violated his First Amendment right to free association. Alexander has not, however, alleged facts adequate to claim a denial of free association. Alexander was not prevented from attending the city council meeting; and it is clear from the record that he was not punished for merely attending the city council meeting or for participating in a rally or other group activity. Rather, he was, viewing the facts in the light most favorable to him, punished (fired) because of the statements he made to the city council and to his superiors, and because of the alleged misconduct he had been warned about previously. This case thus potentially raises at most an issue about violating protected speech, but not about free association.
 
 
 8
 The district court noted correctly that to recover for wrongful discharge in violation of his First Amendment rights, a public employee must demonstrate that the speech or activity was protected; that the speech or activity was a "motivating factor" or "but for" cause of the decision to discharge him; and that the employer would not have reached the same decision in the absence of the protected conduct. See Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 287 (1977). Alexander has failed to meet the Mount Healthy test.
 
 
 9
 In cases involving public employees, the Supreme Court has held that First Amendment rights are not as broad in the workplace as they are in the public forum. The Court has noted that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Board of Education, 391 U.S. 563, 568 (1968). The limitation on First Amendment rights in the workplace was reinforced recently by the Supreme Court in Connick v. Myers, 461 U.S. 138 (1983), where the Court upheld the discharge of an assistant district attorney for insubordination, stating that
 
 
 10
 when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
 
 
 11
 Id. at 147. The Court also remarked,
 
 
 12
 While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.
 
 
 13
 Id. at 149. We have cited the Connick and Pickering language in Jurgensen v. Fairfax County, 745 F.2d 868 (4th Cir.1984), and have noted that police officers fall at the narrow end of the spectrum when evaluating the freedom of employees to speak and act, because police departments are "paramilitary organizations" and "the free speech rights of employees in those departments must thus be evaluated with the special character of the organization in mind." Id. at 880.
 
 
 14
 Even without considering the special nature of a police department, it is clear, as the district court found, that Alexander's speech dealt purely with matters of personal concern and not with matters of public interest, so that his speech was not protected by the First Amendment. There are no genuine issues as to any material facts, so summary judgment was proper.
 
 II.
 
 15
 The district court granted summary judgment on Alexander's claim that his firing violated due process on the grounds that Alexander did not have a protected property interest. We share the district court's doubt that a property interest was present. In any event, summary judgment was properly granted because Alexander was afforded all the process to which he was entitled even if he had a protected property interest.
 
 
 16
 Citing Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985), the district court ruled that, because Alexander was an at-will employee, without an employment contract, he had no property interest in his job. It is true that the South Carolina Supreme Court ruled in Ludwick that South Carolina still recognizes the traditional at-will employment doctrine and that the only exception is where the retaliatory discharge of an at-will employee constitutes a violation of a clear mandate of public policy. See id. at 224-25, 337 S.E.2d at 216. However, in Small v. Springs Industries, Inc., 292 S.C. 481, 357 S.E.2d 452 (1987), the South Carolina Supreme Court ruled that an employee handbook, bulletin, or other material provided by an employer may limit the at-will status of employees. In Small, the court specifically held that where an employer had issued an employee handbook setting forth a four-step disciplinary process to precede discharges, the employer could not discharge an employee without following the four-step process. Id. at 485-86, 357 S.E.2d at 454-55.
 
 
 17
 Similarly, here the city had a detailed personnel manual that set forth a progressive disciplinary policy and provided a grievance and appeal procedure. It is possible that under South Carolina law the issuance of the manual modified the at-will status of city employees. In contrast to Small, however, in the present case the city followed the procedures set forth in the manual. While the city did not use the full progressive disciplinary procedure for the misconduct that led to the initial set of warnings (the procedures call for an oral warning, a written warning, a suspension and then a discharge; there was no suspension here), the manual also provides that for certain offenses the city council may discharge a permanent employee with two weeks notice and payment of accrued annual leave. One of the reasons specified in the manual is "undesirable attitudes." The manual also specifies that "Insubordination (failing to carry out orders given by employee's supervisor)" is an offense that may result in immediate discharge without prior warnings or suspension. The letter notifying Alexander of his termination cited insubordination and an undesirable attitude as the reasons for his discharge. Alexander was paid for two weeks of work after his termination, and he was paid his accrued annual leave.
 
 
 18
 Alexander was also afforded the full grievance and appeal procedure provided by the manual. He had a hearing before the city grievance committee, at which he was represented by counsel and had an opportunity to present witnesses and cross-examine the city's witnesses. The grievance committee recommended that the city council reconsider its decision, acknowledging that the council was "within policy boundaries" but concluding that the "council acted hastily" and that "there was a real lack of cooperation from both parties." The grievance committee did not have the power to reverse the decision, however. After consideration of the committee's report, the council rejected the recommendation and reaffirmed its decision to terminate Alexander's employment.
 
 
 19
 Alexander also complains that he was denied due process because he was denied an unbiased tribunal. He points to the fact that Ralph Cheek, one of the council members who voted to discharge him, was also a witness against him at his grievance hearing. Cheek was also on the police committee that Alexander met with before his appearance at the city council meeting. Alexander's complaint about possible bias thus stems from Cheek's participation in the earlier stages of his case. It is well established that this alone is insufficient to constitute a denial of due process. Bowens v. North Carolina Department of Human Resources, 710 F.2d 1015, 1029 (4th Cir.1983) ("[t]o be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case") (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)).
 
 
 20
 AFFIRMED.