**William KING, Plaintiff,**

v.

**CHARLESTON COUNTY SCHOOL DISTRICT, Defendant.**

**Civil Action No. 2:07–CV–3949–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

May 21, 2009.

A. Christopher Potts, Hitchcock and Potts, Charleston, SC, for Plaintiff.

Alice Fountain Paylor, Elizabeth P. Marlow, Rosen Rosen and Hagood, Charleston, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Defendant Charleston County School District's Motion for Summary Judgment as to claims made by Plaintiff William King ("Plaintiff") against it for wrongful termination in violation of the First Amendment, the Family and Medical Leave Act, and his employment contract. For the reasons set forth below, the court grants Defendant's Motion for Summary Judgment.

## BACKGROUND

In 2004, Defendant Charleston County School District hired Plaintiff to serve as principal of Murray LaSaine Elementary School for one year. After the 2004–2005 school year, Charleston County School District officials had a favorable impression of Plaintiff's performance and renewed his employment contract for the 2005–2006 school year. Because of its large number of low-income students, the school qualified for supplemental federal funding pursuant to Title I, 20 U.S.C. § 6301 et seq.[1] Murray LaSaine used its Title I funds to employ a child development teacher as well as an assistant for the teacher. The child development program is a preschool program for four-year-old children, which the school identified as "at risk" students based on the low scores they received after certain testing. In

---

1. The South Carolina Department of Education receives the funds from the federal government, and the various South Carolina school districts and their schools submit plans to the Department of Education, which detail how they will use the Title I funds. If the Department of Education approves a plan, it allocates funds to the school district, and the school district distributes the funds to the schools that qualified for the supplemental funding.

January 2006, Plaintiff believed that Murray LaSaine had misused its Title I funding by allowing students who did not live in the school's attendance zone to enroll in the school's four-year-old child development class. Specifically, Plaintiff believed that the school allowed students who should have attended James Island Elementary School, a school that does not qualify for Title I funding, to enroll in Murray LaSaine and, therefore, improperly used its Title I funding to serve these students. Plaintiff reported his concerns to Dr. Doug Gepford, the Associate Superintendent and Plaintiff's direct supervisor, on three separate occasions. After his third complaint, Dr. Gepford informed Plaintiff that Superintendent Dr. Maria Goodloe–Johnson would be taking care of the problem. Plaintiff also informed Michelle English Watson, the Charleston County School District employee in charge of Title I funds, and Nancy Busbee, the South Carolina Department of Education Director of Federal Programs, of his concerns. Ms Busbee informed Plaintiff that she appreciated the call and had a team going to Charleston in April that would look into the matter.

On February 22, 2006, Dr. Gepford visited Murray LaSaine to speak with teachers and staff and to let them bring to his attention any issues that may exist at the school. Dr. Gepford conducted similar visits at all the schools located in the Charleston County School District in an effort to increase communication between the teachers and the administrators. Although Dr. Gepford had given Plaintiff notice of this visit, Plaintiff was not at the school, but did inform his staff of Dr. Gepford's visit. According to Dr. Gepford, many of the teachers and staff expressed great concern over Plaintiff's leadership and management of the school. The complaints varied from Plaintiff intimidating teachers and staff and threatening not to renew their contracts to Plaintiff rearranging furniture in their classrooms. Overall, Dr. Gepford found that the teachers and staff were afraid for their jobs, but also felt that, if they complained, Plaintiff would try to get rid of them. Because of these complaints, Dr. Gepford believed a serious problem existed in terms of staff relations and asked Dr. Beverly Varnado, the Human Resources Director of Employee Relations, to visit Murray LaSaine to conduct her own interviews of the teachers and staff.

On April 5, 2006, Dr. Varnado issued a report based on the 18 interviews she conducted at Murray LaSaine. Dr. Varnado concluded that the negative comments far outweighed the positive comments she received about Plaintiff. In her report, Dr. Varnado stated: *"By far, the most common descriptors of [Plaintiff's] behavior were as a micromanager, controller, intimidator, and manipulator."* Dr. Varnado's report also noted the following:

> Based on the volume and consistency of negative comments from a variety of personnel, Mr. King has failed to develop a positive and cooperative environment in his school to the detriment of the faculty. If the atmosphere at Murray–LaSaine Elementary School from this date until the end of the school year continues, teachers feel there will be further deterioration of morale affecting the retention of staff. Several teachers reported that 14 teachers left last year at the end of Mr. King's first year as principal. In spite of the fear of retaliation, and judging by the answers to the question, "Are you going to sign your contract to return here next year?" approximately 75% of the faculty plan to use the transfer option.

Based on her interviews with the teachers and staff, Dr. Varnado recommended that school officials make a timely decision as to whether or not Plaintiff's contract would

be renewed and what his future assignment with the school district would be. She believed a timely decision was necessary so that any changes to Plaintiff's employment could be communicated to the faculty. She found it imperative that teachers who did not intend on renewing their contract if Plaintiff remained the principal at Murray LaSaine could make informed decisions about their future career with the Charleston County School District.

After learning from Dr. Gepford that teachers and staff expressed concern about the working environment at Murray LaSaine, Plaintiff claims to have taken immediate action to better the situation: he provided a "thank you" breakfast for all of the staff; he publicly acknowledged a trust building process during staff development day; he established clear, nonthreatening communication opportunities; he purchased, planned, and implemented the "Caring Administrator" Positive Resource Guide; and he requested assistance from Kathy Lewis, a Charleston County School District employee trained to deal with work environment issues. Plaintiff believes Dr. Varnado did not conduct the interviews according to the proper procedures. He asserts that he and several other staff members were denied the opportunity to talk to Dr. Varnado during her visit, and Plaintiff never received any sort of discipline regarding the adverse information Dr. Gepford and Dr. Varnado learned of, as he never received a verbal or written warning, never was placed on a performance-improvement plan, and never was suspended. Plaintiff believes that because he raised concerns over the use of Title I money at Murray LaSaine, Dr. Gepford had these teacher interviews conducted in an effort to remove him.

On April 7, Nancy McGinley, the Chief Academic Officer for Charleston County School District, and Jim Gray, the Interim Director of Human Resources, asked Plaintiff to meet with them at the district office. While driving to this meeting, Plaintiff alleges to have received a telephone call from one of his teachers, Linda Cox, informing him that Dr. Varnado had met with the staff at Murray LaSaine and told them that Charleston County School District would not rehire Plaintiff as principal of the school for the following school year. At his meeting, Ms. McGinley and Mr. Gray informed Plaintiff that he would not be offered a contract for a principal position for the following school year; rather, he would be offered a teaching position at another school. Plaintiff understood, however, that he was still expected to finish out his employment contract as principal of Murray LaSaine for the remainder of the 2005–2006 school year.

April 7 happened to be the last day of classes before the start of spring break for schools in Charleston County. After this meeting and during his spring break, Plaintiff asserts that he became ill and couldn't sleep; he was throwing up, had diarrhea and experienced migraines; and he had elevated blood pressure and felt depressed. During the spring break, however, Plaintiff did remove personal possessions and other items from his office at Murray LaSaine, which allegedly made it appear as if Plaintiff cleaned out his office, and when spring break ended on April 17, Plaintiff failed to return to work. He still felt ill and had Dr. Jason Laird fax a medical excuse slip to Murray LaSaine, which merely stated that Plaintiff needed to be excused from work "due to illness" from April 17 to April 21. On April 19, the district office received a fax from Charleston Medical Care informing them that Dr. Laird planned to reevaluate Plaintiff on Friday, April 21. Since Dr. Gepford never heard from Plaintiff, he wrote Plaintiff a letter on April 20, asking Plaintiff to call him to discuss his current status and to complete the sick-leave forms required by

Charleston County School District policies. While Plaintiff had not responded to Dr. Gepford's requests to notify him of his status by Friday, April 21, Plaintiff had been at his home, as he approved a teacher's request for a short leave of absence form on April 20.[2] On that Friday, Dr. Gepford wrote a letter to Plaintiff notifying him that he was immediately suspended with pay pending an investigation into his absence from work. The suspension was based on Plaintiff's failure to respond to two phone calls and two letters, as well as Plaintiff's decision to clean out his office, including his desk, all files in file cabinets, and shelves, suggesting that he may not return to the school. The letter further informed Plaintiff that he was not to enter the school grounds or building until notified.

Plaintiff called Dr. Gepford at 6:30 p.m. on Sunday, April 23 and left him a message on his voicemail that he would complete the appropriate leave forms. On April 25, 2006, the Charleston County School District received a letter from Plaintiff's doctor, which stated that he extended Plaintiff's medical sick leave until Wednesday, April 26, 2006. On April 27, the Charleston County School District sent Plaintiff a letter and Family Medical Leave Act forms to complete. By May 2, Plaintiff had not completed the FMLA forms, and Superintendent Dr. Goodloe–Johnson informed Plaintiff, by letter, that she was recommending his employment be terminated immediately. The letter set forth the following factors that led to the recommendation:

- You have not made personal contact with Dr. Gepford prior to or during your absence.
- You have not completed required leave forms, including forms sent to you for Family Medical Leave Act. Even if you have a legitimate medical reason for your absence, you have failed to communicate your status to Dr. Gepford.
- During spring break, you apparently cleaned out your office, including taking material belonging to Charleston County School District.
- Although you sent an e-mail indicating that you were tending to a medical matter with your mother out of town, you have apparently been in town, at least some of the days since April 10, but have failed to communicate personally with Dr. Gepford.
- You did not pick up in a timely way certified letters the District sent to your residence.
- Although you communicated with Dr. Gepford once via e-mail, you have not opened his reply to that e-mail.
- You directed two employees not to report to work Monday, May 1, giving false information that their program had been discontinued.
- On April 27 you went to the bank to close a Murray–LaSaine credit card account in your name.
- An audit of Murray–LaSaine financial affairs reveals irregularities in the school accounts.
- We have received information that you authorized an expenditure for a plaque

2. The Charleston County School District also submitted the affidavit of Dr. Jason Laird, in which Dr. Laird attests that Plaintiff informed him that "Dr. Gepford had come to his home and that he had hidden from him to avoid discussing his absence from work." Fed. R.Evid. 801(d)(2)(A) ("A statement is not hearsay if the statement is offered against a party and is the party's own statement, in either an individual or a representative capacity.").

indicating your service to the school be displayed on the Murray–LaSaine campus; such a plaque was subsequently affixed in a public place without District authorization.

The letter also informed Plaintiff that he "failed to comply with professional standards expected of principals" and that he had "abandoned [his] responsibilities at Murray–LaSaine."

On July 31, 2006, the Charleston County School Board of Trustees held a hearing on the recommendation that Plaintiff be terminated and concluded that substantial evidence supported a finding that Plaintiff (1) violated District rules and regulations; (2) violated state and federal laws which substantially affected the District; (3) was continually absent from his principal position without authorization; (4) committed various acts amounting to breach of conduct; and (5) manifested an evident unfitness for the position in which he was employed. Plaintiff appealed the decision of the Board of Trustees to the Charleston County Court of Common Pleas in accordance with section 59–25–480 of the South Carolina Teacher Employment and Dismissal Act. On appeal, he asserted nine grounds for relief, which included, among others, that his due process rights were violated, the evidence failed to establish that he was manifestly unfit, and the School District erred "in allowing [Plaintiff] to be terminated based on ground and policies which the evidence proved were not applied to or enforced against teachers in [Plaintiff's] school district." The state court also held a hearing over this matter and affirmed the Board of Trustees' decision to terminate Plaintiff based on the substantial evidence that supported such action. Plaintiff decided not to appeal this decision to the South Carolina Court of Appeals.

On November 28, 2007, however, Plaintiff filed suit against the Charleston County School District in the Charleston County Court of Common Pleas, alleging, among other claims, that the school district violated his civil rights under the United States Constitution and that it violated his rights under the Family and Medical Leave Act of 1993. Charleston County School District removed the case to this court based on federal question jurisdiction. Currently before the court is Charleston County School District's Motion for Summary Judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995)

(quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

### I. Plaintiff Voluntarily Dismisses His Promissory Estoppel and Intentional Interference with a Contract Claims

Plaintiff's Memorandum in Opposition to Charleston County School District's Motion for Summary Judgment stated: "Plaintiff does not object to dismissal of his claims for interference with prospective contract relations and promissory estoppel on summary judgment." Based on this request and the fact that Charleston County School District does not oppose it, the court finds it proper to dismiss these claims from this suit. Fed.R.Civ.P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

### II. Wrongful Termination Claims

■ Plaintiff brought several causes of action against the Charleston County School District based on his alleged wrongful termination. He asserts a breach of contract claim, a Family and Medical Leave Act claim, and a § 1983 and public policy claims, alleging that the School District violated both public policy and his constitutional rights when it terminated him in retaliation for exercising his right of free speech. The Charleston County School District contends that these claims are barred by the doctrine of res judicata, since Plaintiff already had the opportunity to litigate the same issues before the Charleston County School District Board of Trustees and the Charleston County Court of Common Pleas. Under 28 U.S.C. § 1738, the records or judicial proceedings of a state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State. . . ." Section 1738 "does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments"; rather, it "commands a federal court to accept the rules chosen by the state from which the judgment is taken." *Briggs v. Newberry County Sch. Dist.,* 838 F.Supp. 232, 234 (D.S.C.1992) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

■ The doctrine of res judicata operates to preclude relitigation of claims which were subject to judgment in a prior action. To establish the defense of res judicata under South Carolina law, three elements must be shown: (1) the parties, or their privies, in the subsequent action must be identical in the first; (2) the second action must involve matters properly included in the first action; and (3) a final determination on the merits of the claim in the former proceeding. *Latimer v. Farmer,* 360 S.C. 375, 385, 602 S.E.2d 32, 37 (2004) (citation omitted). Moreover, "the state court judgment is not required to follow a trial *de novo* to operate as a bar to subsequent actions; the judicial affirmance of an administrative decision is entitled to preclusive effect." *Briggs,* 838 F.Supp. at 234 (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 480 n. 21, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

■ The first prerequisite of claim preclusion, identity of the parties or their privies, is present in this case, as the Charleston County School District was the respondent in the circuit court appeal. The second element that must exist to raise the bar of claim preclusion is an identity of subject matter. "The test

applied by South Carolina courts to determine whether there is an identity of subject matter for res judicata purposes focuses upon the primary right and duty in each case. If the primary right and duty and alleged wrong are the same in each action, there is an identity of subject matter." *Briggs,* 838 F.Supp. at 236; *Plum Creek Dev. Co. v. City of Conway,* 328 S.C. 347, 350, 491 S.E.2d 692, 694 (Ct.App.1997). Because the primary right involved in the administrative and state judicial proceedings, and in this action, was Plaintiff's right to continued employment and the alleged wrong in both actions was the School District's nonrenewal of Plaintiff's employment contract, the identical identity of subject matter is present. Finally, the third requisite of claim preclusion, a final determination on the merits, also is present in this matter, as the circuit court rendered a final decision upon the merits of Plaintiff's appeal. Thus, the court finds that Plaintiff's claims based on his termination of employment with the Charleston County School District are barred from relitigation.

The Fourth Circuit affirmed an almost identical ruling made by a district court in *Briggs v. Newberry County School District,* 838 F.Supp. 232 (D.S.C.1992), *aff'd,* 989 F.2d 491 (4th Cir.1993), *reported in full,* 1993 U.S.App. LEXIS 4884 (4th Cir. March 11, 1993). In *Briggs,* the superintendent of Newberry County School District recommended that the plaintiff, who worked as a nursing instructor in the school district's vocational center, be terminated because the plaintiff's lack of professionalism in her dealings with students and staff, as well as her uncooperative and insubordinate nature, negatively impacted the nursing program. The Newberry County School Board conducted a quasi-judicial hearing about the recommendation and decided to follow the superintendent's recommendation based on the substantial

evidence presented to it. The plaintiff appealed the Board's decision to terminate her employment to a South Carolina circuit court, which affirmed the Board's decision. The plaintiff did not appeal the circuit court's decision to South Carolina's appellate courts, but did file suit in federal court against the school district and its officials, contending that the termination of her employment violated her First Amendment rights, as it was in retaliation of her criticism of her supervisors. The school district and its officials moved the court to dismiss the plaintiff's complaint because the doctrines of res judicata and collateral estoppel precluded the plaintiff's suit. In granting their motion to dismiss based on the principles of claim preclusion, the court determined that the plaintiff could have raised her federal claims in the prior action, and since the requisite three elements of claim preclusion were satisfied, the plaintiff's claims were barred from consideration.

Like the plaintiff in *Briggs,* Plaintiff received a quasi-judicial hearing before the Charleston County School District Board of Trustees pursuant to the South Carolina Teacher Employment and Dismissal Act, in which he had the right to produce witnesses and other documentary evidence, the right to require the Board of Trustees to order the appearance of any witness, the right to cross-examine the District's witnesses, and the right to present any and all defenses to the charges against him. S.C.Code. Ann. § 59–25–470. Plaintiff also had the right to be represented by legal counsel, but he elected to proceed at the hearing without a lawyer because "the truth was on his side." Like the school board in *Briggs,* the Charleston County School Board determined that substantial evidence supported Superintendent Dr. Goodloe–Johnson's recommendation of termination; therefore, it terminated Plaintiff's employment with the District. On

August 21, 2006, Plaintiff appealed the Board's decision to the Charleston County Court of Common Pleas, pursuant to S.C.Code Ann. § 59–25–480, and Plaintiff could have raised his current claims based on his termination in this appeal. *Briggs*, 838 F.Supp. at 235 (citing *Kizer v. Dorchester County Voc. Educ. Bd. of Trs.*, 287 S.C. 545, 340 S.E.2d 144 (1986) (per curiam) (denying a teacher's due process claims on appeal of his termination of employment as a teacher with the district)); *see also* S.C.Code Ann. § 1–23–380(g)(5)(a) (permitting a court to reverse or modify the decision of an administrative agency if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of constitutional or statutory provisions). Like the circuit court in *Briggs*, the circuit court reviewed the record and found that substantial evidence existed to support the Board's decision to terminate Plaintiff. Thus, it affirmed the Board's decision, and Plaintiff opted not to appeal this decision.

Since, as noted above, Plaintiff was given a full and fair opportunity to litigate his wrongful termination claims in the administrative hearing, had the opportunity to present his claims, including his constitutional and statutory claims to the circuit court, and the elements of claim preclusion exist in this case, the court finds that Plaintiff's § 1983, public policy, breach of contract, and Family and Medical Leave Act claims, as they relate to his wrongful termination, are barred from consideration. As to any claims that the school district wrongfully suspended Plaintiff with pay, Plaintiff had the opportunity to litigate those matters in front of both the Charleston County School Board of Trustees and the Charleston County Court of Common Pleas, as his suspension resulted from the same conduct that eventually led to his eventual termination. Therefore, the court finds any claims regarding this matter precluded as well.

### III. *Wrongful Reassignment Claims*

Although the court finds that Plaintiff is precluded from relitigating his wrongful termination claims in federal court based on the doctrine of res judicata, Plaintiff contends that he is not precluded from litigating any claims based on his belief that the School District wrongfully reassigned him from a principal to a teaching position. It appears that Plaintiff bases his wrongful reassignment argument on the fact that "he may have had rights to grieve a non-renewal, but he was never given notice of those rights." In his Complaint, Plaintiff does state that he "was not notified of or given grievance rights in regards to [the school district's decision not to renew his principal contract]." (Complaint ¶ 19.) In his second cause of action, he also asserts that Charleston County School District violated public policy "by [not renewing] plaintiff's contract and discharging plaintiff because he complained that defendant was engaging in illegal, unethical and fraudulent actions in regards to Federal Title I monies." (Complaint ¶ 33.) Furthermore, Plaintiff bases, in part, his breach of contract cause of action on the non-renewal of Plaintiff's principal contract and the fact that he was not afforded the opportunity to grieve that decision. (Complaint ¶¶ 37–40.)

#### a) *First Amendment Claims*

Plaintiff asserts that the School District violated his First Amendment rights by retaliating against him after he exercised his right to free speech. More specifically, Plaintiff contends that the School District decided not to renew his principal contract because he expressed his belief that Murray LaSaine misused Title I money by allowing students living in another elemen-

tary school's attendance zone to attend its four-year-old child development program.[3] In regard to finding a governmental entity liable under § 1983, the Fourth Circuit has stated:

> [A] municipality may be subject to liability under section 1983 if the alleged injury was caused by an identifiable municipal policy or custom. *Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability. Rather, when an alleged constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under section 1983. [*Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).] Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

*Riddick v. School Bd. of the City of Portsmouth,* 238 F.3d 518, 522–23 (4th Cir. 2000). The United States Supreme Court has recognized that school boards and municipalities are indistinguishable for purposes of § 1983. *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 696, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Riddick,* 238 F.3d at 523 n. 3.

■ While Plaintiff contends that Associate Superintendent Dr. Gepford and Superintendent Dr. Goodloe–Johnson, both of whom approved Plaintiff's reassignment from principal to teacher, constitute the final policymakers for the School District, he fails to specifically assert what "policy" he believes the School District operates under that has violated his constitutional rights. Presumably, Plaintiff would contend that the School District had a policy of reassigning principals to teaching positions every time they alleged the misuse of Title I funds. Even if the court assumed that the superintendent and other school officials possessed final policymaking authority for the School District,[4] however, Plaintiff has not offered sufficient evidence that Plaintiff's decision to inquire about the use of Title I funds at Murray LaSaine led to the nonrenewal of his principal contract. To establish that a retaliatory employment action violated his right to free speech, Plaintiff must show (1) the speech relates to a matter of public concern; (2) the employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace; and (3) there is a causal

---

**3.** Although the parties dispute over whether or not Plaintiff spoke as a citizen, thus entitling him to a First Amendment cause of action, or as an employee, thus barring his First Amendment cause of action against the School District, the court does not need to address that issue in resolving this claim.

**4.** In *Love–Lane v. Martin,* the Fourth Circuit noted that a school board "is only liable for

acts that it has 'officially sanctioned or ordered,' which requires proof that the school board "was aware of the constitutional violation and either participated in, or otherwise condoned, it".'" 355 F.3d 766, 782–83 (4th Cir.2004) (citations omitted). Nothing in the record indicates that the School Board was made aware of the fact that Plaintiff complained of Murray LaSaine's use of Title I funds.

relationship between the protected speech and the retaliatory employment action; "specifically, the protected speech must be a substantial factor in the decision to take the allegedly retaliatory action." *Love–Lane v. Martin,* 355 F.3d 766, 776 (4th Cir.2004) (citation omitted). Even if the court were to find that Plaintiff satisfied the first two elements noted above, it does not believe a reasonable jury could conclude that Plaintiff's reassignment was "substantially motivated" by his protected speech. *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 352 (4th Cir.2000).

■ Plaintiff has the burden of proffering facts to demonstrate that his protected speech was a *substantial* factor in the decision to remove him from the job of principal at Murray LaSaine and reassign him to a teaching position. *Love–Lane v. Martin,* 355 F.3d at 780. The test thus becomes one of whether the teacher would have been retained or rehired "but for" his exercise of speech protected by the First Amendment. *Stroman v. Colleton County School Dist.,* 981 F.2d 152, 156 (4th Cir. 1992) (citation omitted). To satisfy his burden, Plaintiff argues that he was told that his principal contract would not be renewed the day after Nancy Busbee, the South Carolina Department of Education Director of Federal Programs, began to evaluate Murray LaSaine's use of Title I money. He contends that the timing of these events evidences that his comments acted as a factor in his reassignment. Although Plaintiff offers no other evidence or arguments related to his comments regarding the school's use of its Title I funds, Plaintiff also asserts that the School District did not follow its discipline policy when it reassigned Plaintiff based on "climate" concerns and that other principals in the district who experienced "climate" issues were given opportunities to improve their performance before being reassigned. Plaintiff believes this creates a sufficient

factual issue regarding whether or not the School District's reason for the nonrenewal of his principal contract—concerns over Plaintiff's relations with his staff—was pretextual in nature.

The Charleston County School District argues that Plaintiff offers nothing but his own bald assertions to show that he was reassigned or terminated because of complaints about alleged misuse of Title I funds. It contends that legitimate reasons existed to reassign and terminate his employment. *Id.* (citation omitted) ("The employer may nevertheless rebut the showing by proof that it would have [reassigned] the plaintiff even in the absence of the protected conduct."). Dr. Gepford met with many of the teachers and staff at Murray LaSaine and found that they were afraid for their jobs, but also felt that, if they complained, Plaintiff would try to get rid of them. The complaints varied from Plaintiff intimidating teachers and staff and threatening not to renew their contracts to Plaintiff rearranging furniture in their classrooms. Because of these complaints, Dr. Gepford believed a serious problem existed in terms of staff relations and asked Dr. Beverly Varnado, the Human Resources Director of Employee Relations, to visit Murray LaSaine to conduct her own interviews of the teachers and staff. In her report, Dr. Varnado stated: *"By far, the most common descriptors of [Plaintiff's] behavior were as a micromanager, controller, intimidator, and manipulator."* Dr. Varnado's report also noted that Plaintiff "has failed to develop a positive and cooperative environment in his school to the detriment of the faculty." She further concluded that "if the atmosphere at Murray–LaSaine Elementary School from this date until the end of the school year continues, teachers feel there will be further deterioration of morale affecting the retention of staff ... and that

75% of the faculty plan to use the transfer option."

After reviewing the record, the court finds that Plaintiff has failed to present sufficient evidence by which a reasonable jury could conclude that his complaints about the use of Title I funds at the school was a "substantial factor" in the School District's decision to reassign him. Based on both Dr. Gepford's and Dr. Varnado's interviews with the teachers and staff, the court finds that the School District had grounds, independent of Plaintiff's alleged "protected speech," that led to his reassignment as a teacher.

### b) *Public Policy Claims*

 Plaintiff also asserts that the Charleston County School District violated public policy when it reassigned him to a teaching position after he "blew the whistle" on the alleged misuse of Title I funds. In *Ludwick v. This Minute of Carolina, Inc.*, the South Carolina Supreme Court joined a growing majority of states that recognize the "public policy" exception to the doctrine of employment at will. 287 S.C. 219, 221, 337 S.E.2d 213, 214 (1985). Under the public policy exception, an employee has a cause of action in tort for wrongful discharge where there is a "retaliatory discharge of the at-will employee in violation of a clear mandate of public policy." *Id.* at 219, 337 S.E.2d at 216. The School District contends that Plaintiff misapplies "this exception to Plaintiff's situation, as Plaintiff had a contractual right to his employment for the 2005–2006 school year and, as such, was not an at-will employee. Moreover, the South Carolina Supreme Court has declined to extend the public policy exception to cases where the employee has an existing remedy for a discharge which allegedly violates rights other than the right to employment itself." *Epps v. Clarendon County*, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (1991) (noting that 42 U.S.C. § 1983 allows a civil action for damages against a government official who deprives an individual of a constitutionally protected right). Therefore, the court grants the Charleston County School District motion for summary judgment to Plaintiff's public policy cause of action since that exception applies to the at-will employment doctrine, which is not implicated by the facts of this case.

### c) *Breach of Contract Claims*

 Plaintiff also contends that the Charleston County School District breached its employment contract with him by reassigning him from principal to teacher when it did not notify him that problems existed with his performance, did not provide him with assistance to cure any problems it had with his performance, and did not inform [Plaintiff] that he may have grievance rights." To support his assertions, Plaintiff cites to S.C.Code Ann. § 59–25–440, which states:

> Whenever a superior, principal, where applicable, or supervisor charged with the supervision of a teacher finds it necessary to admonish a teacher for a reason that he believes may lead to, or be cited as a reason for, dismissal or cause the teacher not to be reemployed he shall: (1) bring the matter in writing to the attention of the teacher involved and make a reasonable effort to assist the teacher to correct whatever appears to be the cause of potential dismissal or failure to be reemployed and, (2) except as provided in § 59–25–450, allow reasonable time for improvement.

In her deposition, Nancy McGinley, the Chief Academic Officer for Charleston County School District, did state that she thought this procedure applied to principals, but she did not state that these procedures applied to Plaintiff's particular circumstances. Furthermore, the statute appears to establish a procedure that is

followed when a *teacher* is admonished for a reason that might lead to a dismissal. In fact, part of the statute's title is "*school administrator* required to make reasonable effort to assist *teacher* in corrective measures." Thus, the court is not convinced that this provision applies to Plaintiff, as a principal. Even if the court did apply the statute's mandates to Plaintiff's reassignment, nothing in the record indicates that, at the time Plaintiff was informed he would be offered a teaching position for the following school year rather than his principal position, the School District had reason to believe he would be dismissed or not reemployed. In fact, the School District offered Plaintiff continued employment, albeit in a different position, and the concerns that surrounded Plaintiff's performance during his reassignment were wholly unrelated to the conduct that ultimately led to his termination.

█ Finally, Plaintiff believes that the School District breached his employment contract by not affording him a hearing under § 59–25–420, which states, "Any teacher, receiving a notice that he will not be reemployed for the ensuing year, shall have the same notice and opportunity for a hearing provided in subsequent sections for teachers dismissed for cause during the school year." As the School District points out, Plaintiff was not a "teacher," as the statute requires, and it offered Plaintiff employment for the subsequent school year; thus, he was not entitled to a hearing under this provision, as such opportunity is only afforded those teachers not being reemployed. Furthermore, Plaintiff has not brought to the court's attention any provision in his employment contract that entitled him to continued employment as a principal beyond the 2005–2006 school year, and South Carolina Code section 59–24–15 expressly states:

> Certified education personnel *who are employed as administrators* on an annual or multi-year contract will retain their rights *as a teacher* under the provisions of Article 3 of Chapter 19 and Article 5 of Chapter 25 of this title *but no such rights are granted to the position or salary of administrator.* Any such administrator who presently is under a contract granting such rights shall retain that status until the expiration of that contract.

Since Plaintiff's contract only insured him a principal position for the 2005–2006 school year, and the law only affords administrators a retained right as a teacher with the School District, the court grants the School District's Motion for Summary Judgment as to Plaintiff's breach of contract claims.

## IV. *Defamation Claims*

Finally, Plaintiff claims that the Charleston County School District, through its employees, defamed him by falsely stating that he was unfit to carry out his given profession and that he was unstable and may return to the school with a gun to shoot employees. Furthermore, Plaintiff claims that the school district gave false and misleading information to his prospective employers, which caused them not to hire him.

At some point between the time when Charleston County School District suspended Plaintiff and when he was terminated, the locks on the doors at Murray LaSaine were changed because of concern that Plaintiff may return to the school. On May 10, Dr. Gepford e-mailed Jeff Scott, a security officer for the school district, and asked him if additional security could be provided for an upcoming carnival at Murray LaSaine. The e-mail informed Scott that Plaintiff had been suspended and there was fear that he may come back to the campus and cause trouble. Dr. Gepford further asked Rodney Moore, a learning specialist, to spend part of his time at Murray LaSaine until the school

district hired another principal. Dr. Gepford informed Mr. Moore that the locks on the school's doors had been changed, and based on the teacher's and staff's complaints, there needed to be a heightened awareness on campus concerning security issues. Plaintiff also provided the affidavit of Kimberly Lucia, the attendance clerk at Murray LaSaine. In her affidavit, Ms. Lucia attests to a conversation with the school psychologist, in which he told her that "people at the district office were concerned about [Plaintiff's] stability and that we should lock the doors for fear that [he] may come back to the school with a gun and shoot everyone. [He] also told me that the above statements were being discussed over at the district office."

■ To recover for defamation, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Erickson v. Jones St. Publishers., LLC,* 368 S.C. 444, 465, 629 S.E.2d 653, 665 (2006). In addition to these elements, the Charleston County School District asks the court to consider a principal to be a "public official" and, as such, require Plaintiff to prove that any defamatory statements were made with actual malice. *Elder v. Gaffney Ledger,* 341 S.C. 108, 113, 533 S.E.2d 899, 901 (2000) ("In defamation actions involving a 'public official' or 'public figure,' the plaintiff must [also] prove the statement was made with 'actual malice,' i.e., with either knowledge that it was false or reckless disregard for its truth."). The South Carolina courts have not addressed the issue of whether or not a principal is a public official for purposes of a defamation action, and based on the record in this matter, the court does not need to address the novel issue in order to resolve this motion. Even if the court were to conclude that a principal is not a public official, Plaintiff has failed to present competent evidence of defamatory conduct on the part of Charleston County School District to survive summary judgment.

■ The affidavit of Ms. Lucia attests that the school psychologist told her that "the people at the district office" feared Plaintiff "would come back to the school with a gun and shoot everyone." The Charleston County School District correctly points out that Plaintiff relies on a single statement to survive summary judgment on this claim, and Plaintiff has failed to make any argument or provide any authority that the school psychologist acted as an actual or apparent agent of the Charleston County School District when he allegedly made this statement about Plaintiff. *Murray v. Holnam, Inc.,* 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct.App. 2001) ("A principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority.") While the Board of Trustees is authorized to speak and act on behalf of the Charleston County School District, the court does not think a school psychologist has the same authority to speak on behalf of the School District, particularly involving personnel matters. Furthermore, nothing indicates that the School District represented the psychologist to be its agent for information regarding Plaintiff's employment at Murray LaSaine. Thus, the court finds that Plaintiff has failed to offer competent evidence of a false and defamatory statement concerning him that can be attributable to the School District.

■ Plaintiff also appears to allege that the Charleston County School District defamed Plaintiff to a prospective employer when the employer contacted it in regard to a professional reference for Plain-

tiff. From Dr. Gepford's deposition, which Plaintiff cited to in his memorandum, it appears that the executive coordinator for human resources with the Charlotte–Mecklenburg schools contacted the Charleston County School District to obtain a professional reference for Plaintiff as a candidate for an assistant principal position. Dr. Gepford responded to her inquiry with a letter, which indicated Plaintiff had been terminated with cause, and with a copy of the School Board's Order, which indicated that Plaintiff had been terminated as principal for cause. Although Plaintiff bases his allegations on this letter, he failed to submit it as an exhibit to his memorandum. More importantly, this statement is true, and Plaintiff admitted it constituted a true statement in his own deposition. Because a defamation cause of action requires a showing that a false statement was publicized to a third party, the court finds that Plaintiff has failed to prove a genuine issue of material fact exists as to this claim and grants summary judgment in favor of the Charleston County School District. *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct.App.2001) (recognizing that a publisher may avoid liability in any type of defamation case by proving the statement is true).

### CONCLUSION

Based on the foregoing, the court **ORDERS** that Defendant Charleston County School District's Motion for Summary Judgment be **GRANTED** as to all of Plaintiff William King's causes of action.