713 S.E.2d 634

**Glenda BARRON, Petitioner,**

v.

**LABOR FINDERS OF SOUTH CAROLINA, Respondent.**

No. 27018.

Supreme Court of South Carolina.

Heard April 7, 2011.

Decided Aug. 1, 2011.

610

A. Christopher Potts, of Hitchcock & Potts, of Charleston, for Petitioner.

Paul Martin Platte, of Rogers Townsend & Thomas, of Columbia, for Respondent.

Justice PLEICONES.

We granted certiorari to review the Court of Appeals' decision in *Barron v. Labor Finders of South Carolina*, 384 S.C. 21, 682 S.E.2d 271 (Ct.App.2009). We affirm as modified.

## FACTS

### A. Employment History

Petitioner began working for respondent in respondent's Charleston office around 1990. During petitioner's employment, respondent planned to open a second office location in the Charleston area and informed petitioner she would be promoted to regional sales manager for both Charleston locations. In 2004, petitioner signed an agreement acknowledging her status as an at-will employee and setting her compensation as "straight commission" of 3% of customer payments deposited and posted by both Charleston offices each week, to be paid within ninety days of the invoice date.

The second Charleston office opened in September 2004 and began earning income that November. In January of the following year, petitioner became concerned that respondent had not paid her the full amount of commissions she had earned. Petitioner relayed her concerns and subsequently met with her supervisor to discuss the matter. During the meeting, petitioner showed the supervisor a copy of the compensation agreement, of which the supervisor was previously unaware. The supervisor contacted respondent's owner, who acknowledged that, due to an oversight, he forgot to pay petitioner the commissions from the new Charleston location. Petitioner never filed a written complaint with the Depart-

ment of Labor, Licensing, and Regulation, as outlined by the Payment of Wages Act ("the Act").[1]

Respondent terminated petitioner's employment the next day, stating it was forced to downsize in light of recent budget cuts. Eight or nine days later, respondent issued petitioner a check in excess of the amount she was owed for commissions.

### B. Procedural History

Petitioner instituted this action, alleging violations of the Act, breach of contract, breach of contract accompanied by a fraudulent act, and wrongful termination in violation of public policy. The circuit court granted summary judgment in favor of respondent as to all causes of action.

Petitioner appealed the entry of summary judgment as to her wrongful termination claim. The Court of Appeals affirmed.

### ISSUE

Did the Court of Appeals err in affirming the circuit court's grant of summary judgment as to petitioner's wrongful termination claim?

### STANDARD OF REVIEW

When reviewing the grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002). Summary judgment is appropriate when the pleadings, depositions, affidavits and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Id.;* Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Fleming, supra.*

---

1. The Act requires an employer timely pay all wages due to an employee. S.C.Code Ann. § 41–10–40 (Supp.2010). Section 41–10–60 of the South Carolina Code states the Department of Labor may institute an investigation when an employee alleges a violation of the Act. S.C.Code Ann. § 41–10–60 (Supp.2010).

## LAW/ANALYSIS

█ Petitioner argues the Court of Appeals erred in holding she could not maintain a wrongful termination claim under the public policy exception to the at-will employment doctrine. While we agree the Court of Appeals erred in its analysis, we nonetheless affirm as modified.

█ In South Carolina, employment at-will is presumed absent the creation of a specific contract of employment. *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 310, 698 S.E.2d 773, 778 (2010). An at-will employee may be terminated at any time for any reason or for no reason, with or without cause. *Id.* Under the "public policy exception" to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985). The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, *Ludwick, supra,* or (2) the reason for the employee's termination itself is a violation of criminal law. *Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 422 S.E.2d 91 (1992) (employee was terminated after he refused to contribute to political action fund, and his termination violated S.C.Code Ann. § 16–17–560).

█ While the public policy exception applies to situations where an employer requires an employee to violate the law or the reason for the termination itself is a violation of criminal law, the public policy exception is not limited to these situations. *See Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995); *Keiger v. Citgo, Coastal Petroleum, Inc.*, 326 S.C. 369, 482 S.E.2d 792 (Ct.App.1997). In both of these cases, the courts declined to address whether the public policy exception applied because, in their procedural posture, it was not appropriate to decide the novel issue without further developing the facts of the case. *Garner*, 318 S.C. at 227 n. 3, 456 S.E.2d at 910 n. 3 (appeal from a grant of a 12(b)(6), SCRCP, motion to dismiss); *Keiger*, 326 S.C. at 373, 482 S.E.2d at 794 (same). Both cases make clear, however, that an at-will employee may have a cause of action for

wrongful termination even if the discharge itself did not violate criminal law or the employer did not require the employee to violate the law.

 The public policy exception does not, however, extend to situations where the employee has an existing statutory remedy for wrongful termination. See *Dockins v. Ingles Markets, Inc.*, 306 S.C. 496, 413 S.E.2d 18 (1992) (employee allegedly terminated in retaliation for filing complaint under Fair Labor Standards Act had existing statutory remedy for wrongful termination); *see also Epps v. Clarendon County*, 304 S.C. 424, 405 S.E.2d 386 (1991) (employee had an existing remedy for wrongful termination under Title 42 U.S.C. § 1983).

Here, relying largely on *Lawson v. S.C. Dep't of Corrections*, 340 S.C. 346, 532 S.E.2d 259 (2000), the Court of Appeals held the public policy exception did not apply as petitioner was not asked to violate the law and the reason for her termination itself was not a violation of criminal law. *Barron*, at 28, 682 S.E.2d at 274. We find the Court of Appeals misread *Lawson* as limiting the public policy exception to these two situations. In *Lawson*, we determined the employee could not establish a claim for wrongful termination under the public policy exception where the employee alleged he was terminated in retaliation for reporting hiring policy violations under the Whistleblower statute. Although we initially noted the employee's allegations did not support a wrongful termination claim as he was not asked to violate the law and his termination itself did not violate the criminal law, we ultimately found the public policy exception did not apply because the employee was limited to the existing statutory remedy for wrongful termination provided by the Whistleblower statute. *Lawson*, at 350, 532 S.E.2d at 261.

Here, the Court of Appeals correctly recognizes that the public policy exception applies to situations where an employer requires an employee to violate the law, or the reason for the termination itself is a violation of criminal law. We find the court erred, however, in holding the exception is limited to these situations where our courts have explicitly held the public policy exception is not so limited. *Garner, supra; Keiger, supra.* Accordingly, we overrule the Court of Ap-

peals' opinion to the extent it holds the public policy exception applies only in situations where the employer asks the employee to violate the law or the reason for the termination itself is a violation of criminal law.

Although we find the Court of Appeals erred in its analysis, we nonetheless affirm its holding that summary judgment was proper here. Petitioner largely relies on *Evans v. Taylor Made Sandwich Co.*, 337 S.C. 95, 522 S.E.2d 350 (Ct.App.1999) to support her contention she can maintain a claim for wrongful termination in violation of public policy. Specifically, petitioner argues she can pursue a claim for wrongful termination under *Evans* because there was evidence respondent fired her in retaliation for complaining internally about her unpaid wages. Because *Evans* has never been reviewed by this Court, we take the opportunity to address the holdings set forth in that opinion, as relates to petitioner's argument.

In *Evans*, the Court of Appeals held an employee may maintain a claim for wrongful termination in violation of public policy when he is terminated in retaliation for reporting a violation of the Act to the Department of Labor. In that case, several employees filed wage complaints with the Department of Labor, which prompted an investigation of the employer. *Id.* at 98, 522 S.E.2d at 351. Shortly after the investigation was complete, the employer terminated all of the employees. *Id.* A jury awarded the employees damages for wrongful termination. *Id.* at 99, 522 S.E.2d at 351. The Court of Appeals affirmed the jury verdict, holding the employees could maintain a claim for wrongful termination in violation of public policy because, while the law of this state provides a remedy for the recovery of wages which remain unpaid after termination, it does not provide a remedy for wrongful termination itself. *Id.* at 102, 522 S.E.2d at 353. The court also found there was sufficient evidence to affirm the jury's determination that discharging an employee in retaliation for filing a complaint with the Department of Labor was a violation of the public policy of this state. *Id.* at 103, 522 S.E.2d at 354.

■■■ We overrule *Evans* to the extent it holds that a jury may determine whether discharging an employee on certain grounds is a violation of public policy. In this state, an at-will employee has a cause of action for wrongful termination where

there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. *Ludwick, supra.* The determination of what constitutes public policy is a question of law for the courts to decide. *See Citizens' Bank v. Heyward,* 135 S.C. 190, 133 S.E. 709, 713 (1925) ("The primary source of the declaration of public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration."). It is not a function of the jury to determine questions of law such as what constitutes public policy. Rather, once a public policy is established, the jury would determine the factual question whether the employee's termination was in violation of that public policy.

While we overrule *Evans* to that extent, we agree with the *Evans* court that there is no existing statutory remedy for wrongful termination within the Act that would prohibit an employee from maintaining a claim based upon a violation of public policy. The Act provides a statutory remedy whereby an employee may recover wrongfully withheld wages. *See* S.C.Code Ann. § 41–10–80(C) (Supp.2010). The Act does not, however, provide a statutory remedy whereby an employee may recover damages for wrongful termination. Because the Act does not provide a statutory remedy for wrongful termination, we find an action for wrongful termination cannot be precluded under the holdings outlined in *Dockins, supra,* and *Epps, supra.*

Although we agree with the *Evans* court that there is no statutory remedy within the Act that would *preclude* an employee from maintaining a wrongful termination action, we nevertheless decline to address whether the public policy exception applies when an employee is terminated in retaliation for filing a wage complaint with the Department of Labor. We find the Court of Appeals properly affirmed the circuit court's grant of summary judgment because there is simply no evidence the Act was ever implicated. Petitioner never filed a complaint with the Department of Labor as required by the Act, nor did she ever indicate to respondent she had filed or intended to file a complaint. Thus, viewing the evidence in the light most favorable to petitioner, there is no genuine issue of material fact whether petitioner was terminated in retaliation for availing herself of the protections of the Act. *Fleming, supra.*

We do not foreclose the possibility that a claim for wrongful termination in violation of public policy may exist when an employee is terminated in retaliation for instituting a claim under the Act. We simply decline to address the issue at this time because there is no evidence petitioner was terminated in retaliation for filing or threatening to file such a claim.

## CONCLUSION

While the Court of Appeals erred in its analysis, we none-theless find the circuit court's grant of summary judgment was properly affirmed. Accordingly, the opinion of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., BEATTY, KITTREDGE, JJ., and Acting Justice BROOKS GOLDSMITH, concur.