743 S.E.2d 843

Ammie McNEIL, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS and
Jon E. Ozmint, Robert Ward, and Bernard McKie in
their individual capacities, Defendants,

Of whom South Carolina Department
of Corrections is the Respondent.

Appellate Case No. 2011–202887.

No. 5122.

Court of Appeals of South Carolina.

Heard Oct. 30, 2012.
Decided May 1, 2013.
Rehearing Denied June 25, 2013.

188

J. Lewis Cromer and Julius Wistar Babb, IV, both of J. Lewis Cromer & Associates, LLC, of Columbia, for Appellant.

Steven Michael Pruitt and Hannah K. Metts, both of McDonald Patrick Poston Hemphill & Roper, LLC, of Greenwood, for Respondent.

SHORT, J.

Ammie McNeil appeals from the trial court's order granting the South Carolina Department of Corrections' (SCDC) mo-

tion to dismiss her claims for due process violations, public policy discharge, and defamation. We affirm.

## FACTS

SCDC employed McNeil at Kirkland Reception and Evaluation Center (Kirkland) as a captain. SCDC maintains custody of, exercises control of, and provides for the care of inmates and prisoners incarcerated by the state, including Kirkland, which is located in Richland County. An inmate, who was prescribed hypertrophic medication for threatening suicide, was transported to Kirkland, and despite his request for his medication, he did not receive it. McNeil claimed she was not made aware of the inmate's prescribed medication when he arrived at Kirkland. Even though the inmate was a known suicide risk, he was not placed in a cell with a closed-circuit camera as required. On the night of the incident, only McNeil and one other officer were on duty in violation of Kirkland's regulations requiring four to six officers. Sometime between 4 and 4:45 a.m. on August 11, 2006, the inmate committed suicide by stuffing toilet paper in his mouth and nose, asphyxiating himself. McNeil made this discovery when she tried to rouse the inmate for the 4:45 a.m. standing count.

SCDC performed an internal investigation as to the inmate's death and asked SLED (State Law Enforcement Division) to perform its own investigation. Thereafter, McNeil was cleared of any responsibility for the inmate's death and was promoted to sergeant in November 2008. In December 2007, the inmate's family filed a wrongful death lawsuit against SCDC. The case was mediated and settled in July 2009. In September 2009, McNeil was terminated because of alleged negligence in her duties at the time of the inmate's death and falsification of documents after his suicide.

On December 8, 2010, McNeil filed a complaint against SCDC, and SCDC Director Jon Ozmint, SCDC Director of Operations Robert Ward, and Kirkland Warden Bernard McKie, in their individual capacities.[1] Her complaint alleged causes of action for due process violations, public policy discharge, negligence, gross negligence, defamation, and civil conspiracy. McNeil claimed that because of the large settle-

---

1. SCDC is the only respondent in this appeal.

ment and the high scrutiny placed on them, Ozmint, Ward, and McKie "feared pressure from the media and certain legislators resulting in an agenda to find a scapegoat or to punish someone to take the pressure off of themselves."

SCDC filed a motion to dismiss McNeil's claims on March 28, 2011, alleging she failed to state a cause of action for which relief can be granted. After a hearing on the matter, on August 15, 2011, the trial court issued its order granting SCDC's motion to dismiss McNeil's claims. The order notes McNeil alleged in her complaint "she was terminated for 'personal, political, pretextual, and scapegoating purposes' in violation of public policy." However, the court explained, "South Carolina has long recognized the doctrine of employment at-will, such that an employer may terminate an employee for good reason, no reason, or bad reason without liability." Further, the court stated McNeil "does not dispute that she was an at-will employee and even if she was terminated for personal reasons or as a scapegoat as she alleges, she still fails to state a claim and her action must be dismissed." Additionally, the court noted McNeil neither alleged her discharge was in violation of any statute or act by the General Assembly, nor cited to a South Carolina case that has found a violation of public policy without a violation of a statute or act by the General Assembly. As a result of failing to state a claim for wrongful termination, the court found her remaining causes of action could not go forward and must be dismissed.[2] McNeil filed a Rule 59(e), SCRCP, motion, which the court denied. This appeal followed.

**STANDARD OF REVIEW**

When reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, this court applies the same standard of review as the trial court. *Doe v. Marion,* 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). "In considering a motion to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action, the trial court must base its ruling solely on allegations set forth in the complaint." *Id.* Dismissal under Rule 12(b)(6) is improper if the facts alleged

---

2. McNeil did not appeal the dismissal of her claims for negligence and gross negligence; therefore, the trial court's dismissal of these claims is the law of the case.

and inferences reasonably deducible therefrom, when viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory. *Id.* The court should not dismiss the complaint merely because it doubts the plaintiff will prevail in the action. *Id.*

## LAW/ANALYSIS

### I. Public Policy Discharge

■ McNeil argues the trial court erred in finding she failed to state a claim for public policy discharge on the face of her complaint because she pled she was terminated after complaining about institutional safety violations and testifying after being subpoenaed in a civil trial. We disagree.

■ "An at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614, 713 S.E.2d 634, 636 (2011). "Under the 'public policy exception' to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." *Id.* at 614, 713 S.E.2d at 637. "The primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." *Citizens' Bank v. Heyward*, 135 S.C. 190, 133 S.E. 709, 713 (1925); *see Barron*, 393 S.C. at 617, 713 S.E.2d at 638 (stating the determination of what constitutes public policy for purposes of the public policy exception to the at-will employment doctrine is a question of law for the courts to decide). "The public policy exception clearly applies in cases where either (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law." *Barron*, 393 S.C. at 614, 713 S.E.2d at 637; *see Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985) (holding the public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law); *Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992) (finding employee would have a cause of action for wrongful discharge if he was discharged because he refused to contribute to a political action fund).

The *Barron* court found the public policy exception is not limited to these two situations; however, the exception has not yet been extended beyond them. 393 S.C. at 614, 713 S.E.2d at 637.

As the dissent notes, in two cases for wrongful termination based on the public policy exception, our courts have reversed the trial court's dismissal pursuant to a 12(b)(6) motion because the allegations were novel and deserved further development of the facts. We find these cases are distinguishable from this case. In *Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 223, 456 S.E.2d 907, 908 (1995), the employee alleged his employer terminated him in retaliation for reporting to the United States Department of Energy and the news media his concerns about radioactive contamination and unsafe working conditions at the Savannah River Site and for voluntarily testifying about his concerns before the Defense Nuclear Facilities Safety Board. Our supreme court held the trial court's dismissal of the employee's wrongful discharge action based on the public policy exception to the employment at-will doctrine for failure to state a claim was inappropriate when the employee alleged his employment was terminated in retaliation for reporting and testifying about radioactive contamination and unsafe working conditions at the nuclear facility. *Id.* at 226–27, 456 S.E.2d at 909–10. The court stated "[w]hether the [public policy] exception applies when an employee is terminated in retaliation for reporting and testifying about radioactive contamination and unsafe working conditions at a nuclear facility is a novel issue, and such issues should not ordinarily be decided in ruling on a 12(b)(6) motion to dismiss." *Id.* at 226, 456 S.E.2d at 909. We find *Garner* to be distinguishable because the existence of radioactive contamination and unsafe working conditions is a matter of public interest and public policy, and the employee specifically alleged his termination was in retaliation for reporting his concerns to the proper authorities.

In *Keiger v. Citgo, Coastal Petroleum, Inc.*, 326 S.C. 369, 370, 482 S.E.2d 792, 793 (Ct.App.1997), the employee alleged her employer terminated her employment in retaliation for reporting her concerns to the South Carolina Department of Labor about violations of state and federal labor laws for reducing her pay without prior notice. The employee told the

manager she had contacted the state labor board and, based on the advice she had received, if the violations were not corrected immediately, she would file a formal complaint with the labor board. *Id.* This court held whether an employer's retaliatory discharge of an employee who threatened to invoke her rights under the Payment of Wages Act was a violation of a clear mandate of public policy and was a novel issue; therefore, the trial court erred in dismissing the employee's cause of action pursuant to a Rule 12(b)(6) motion. *Id.* at 373, 482 S.E.2d at 794. We find *Keiger* to be distinguishable because a violation of the Payment of Wages Act is a violation of a clear mandate of public policy, and the employee specifically alleged her termination was in retaliation for reporting her concerns to the proper authorities.

■ McNeil's complaint does not contend SCDC demanded she violate a law or her termination violated any law. Her complaint also does not state sufficient facts from which a court could determine a violation of any public policy. McNeil merely alleges SCDC terminated her for personal, political, pretextual, and scapegoating purposes. She does not allege her termination was retaliatory. The dissent finds the trial court failed to consider whether this case poses a novel issue and whether the facts should have been developed further before the motion to dismiss was granted. On the contrary, the learned trial court found McNeil's allegations that she was discharged for personal, pretextual, and scapegoating purposes was insufficient to state a violation of the public policy of South Carolina because our law provides an at-will employee may be terminated for a good reason, bad reason, or no reason at all. Simply stated, a litigant must allege more than a general statement that her discharge violated public policy. The complaint must set forth specific allegations that would enable the court to determine what public policy was violated. By the dissent's interpretation of our law, any employee could circumvent the employment at-will doctrine by merely asserting a termination was retaliatory in violation of a clear mandate of public policy and contend it was a novel issue in this state. This would be contrary to the public policy exception recognized by our courts. Therefore, we find McNeil's general allegations do not support a wrongful discharge action, and the trial court did not err in dismissing her cause of action.

## II. Due Process Violation

■ McNeil argues the trial court erred in finding her cause of action for violations of due process against SCDC could not proceed because SCDC investigated the inmate's death three years prior to her termination and during those three years did not give her any indication her job was in jeopardy. We disagree.

■ "Procedural due process requires notice and the opportunity to be heard." *Cameron & Barkley Co. v. S.C. Procurement Review Panel,* 317 S.C. 437, 440, 454 S.E.2d 892, 894 (1995). "Ordinarily, a claimant is not entitled to substantive due process when her state employment is terminated unless she has a property interest in continued employment." *Hamilton v. Bd. of Trs. of Oconee Cnty. Sch. Dist.,* 282 S.C. 519, 524–25, 319 S.E.2d 717, 721 (Ct.App.1984). "[A] property interest in employment can be found in existing state law; in contracts, express or implied; or in mutually explicit understandings." *Id.* at 525, 319 S.E.2d at 721.

McNeil does not allege she was not given an opportunity to be heard regarding her termination. In fact, McNeil admits "she was given her grievance rights following her termination." McNeil also has not provided any state law or regulation that would require her employment contract to be renewed, she does not claim her contract guarantees future employment, and she does not allege she and SCDC had a "mutually explicit understanding" that her contract would be renewed. The mere fact that McNeil's employment contract had been renewed twice in the past is not sufficient to create a protected property interest in her continued employment. *See Hamilton,* 282 S.C. at 526, 319 S.E.2d at 722. Therefore, we find McNeil's allegations do not support an action for violation of due process, and the trial court did not err in dismissing her cause of action.

## III. Defamation

■ McNeil argues the trial court erred in finding her defamation claim against SCDC could not proceed because she pled SCDC made and published statements that insinuated she was unfit in her business and profession. We disagree.

 "The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Murray v. Holnam, Inc.*, 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct.App.2001).

McNeil did not allege any of SCDC's statements were unprivileged, and she did not set forth with any specificity what the alleged false statements were. She also did not allege any of the statements were published to a third party or that SCDC made the alleged statements. Additionally, she did not assert to whom SCDC made the alleged statements. Therefore, we find McNeil's allegations do not support an action for defamation, and the trial court did not err in dismissing her cause of action.

## CONCLUSION

Accordingly, the trial court's order is

**AFFIRMED.**

KONDUROS, J., concurs.

LOCKEMY, J., concurring in part and dissenting in part.

I respectfully dissent only as to the majority's decision to affirm the trial court's dismissal as to McNeil's public policy discharge claim.

In South Carolina, an at-will employee may be terminated for any reason or no reason at all. *Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614, 713 S.E.2d 634, 636 (2011). Our supreme court recognized an exception to this doctrine in *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985). Under the "public policy exception" to the at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. *Ludwick*, 287 S.C. at 225, 337 S.E.2d at 216. Our supreme court has determined the public policy exception clearly applies in cases in which either: (1) the employer requires the employee to violate the law; or (2) the reason for the employee's termination itself is a violation

of criminal law. *See id.; Culler v. Blue Ridge Elec. Co-op., Inc.,* 309 S.C. 243, 246, 422 S.E.2d 91, 92–93 (1992). These two situations seem to have been the sole focus of the trial court.

While the trial court and, to some extent, the majority, seem focused on only these two situations, our supreme court has made clear the public policy exception is not limited to only these situations. *See Barron,* 393 S.C. at 614, 713 S.E.2d at 637 (holding the public policy exception was not limited to situations where an employer requires an employee to violate the law or the reason for the termination itself is a violation of criminal law). In fact, in at least two cases our courts have reversed trial court grants of Rule 12(b)(6), SCRCP motions on wrongful termination claims based on the public policy exception because the allegations were novel and deserved further development of the facts. *See Garner v. Morrison Knudsen Corp.,* 318 S.C. 223, 226, 456 S.E.2d 907, 909 (1995); *Keiger v. Citgo, Coastal Petroleum, Inc.,* 326 S.C. 369, 373, 482 S.E.2d 792, 794 (Ct.App.1997). In addition, our supreme court has also held that when there is a statutory remedy for wrongful termination, the public policy exception does not apply. *See Barron,* 393 S.C. at 615, 713 S.E.2d at 637.

Consequently, the public policy exception has developed beyond just a consideration of whether the termination was due to an employee refusing to violate the law or the termination itself was a violation of the law. Here, however, it appears the trial court only considered these two situations when it granted SCDC's Rule 12(b)(6) motion. The trial court elucidated the basis for its decision in the following passage:

> [McNeil] points to no violation of any statute or act by the General Assembly, but as stated above claims that her discharge was for "personal, pretextual and scapegoating purposes." [McNeil] also points to no case in this state that has found a violation of public policy without a violation of a statute or act by the General Assembly. For these reasons, the Court finds that [McNeil] fails to allege a violation of a clear mandate of public policy.

The trial court failed to consider whether this case posed a novel issue and whether the facts should have been developed further. In addition, the trial court did not consider whether

a statutory remedy for wrongful discharge justifying the dismissal of McNeil's case existed. Although the trial court and the majority both mentioned the public policy exception is not limited to the two situations stated above, they noted no court has extended the public policy exception beyond them.

The majority relies heavily on *Barron* in affirming the trial court's decision. Respectfully, I read *Barron* as making clear the public policy exception is not limited to situations in which an employee was required to break the law or the termination itself was a violation of the law. Further, *Barron* declares solidly that the decision of whether there was a violation of a clear mandate of public policy is a question of law for the court and not a jury. It is interesting that *Barron* makes a strong effort to clarify that the public policy exception is not limited to the two stated situations, yet the majority cites it while affirming a decision limited to those situations.

To be clear, I do not interpret our law as holding mere allegations of a termination of an at-will employee in violation of a clear mandate of public policy are sufficient to avoid the grant of a Rule 12(b)(6) motion. The court should permit the facts to be developed only when there is an issue that, based on guidance from previous cases, is sufficiently novel to at least permit some discovery before summarily dismissing the action. In this case, McNeil intimates that her compliance with a subpoena and testimony at a deposition angered SCDC. In her complaint, McNeil asserts she was terminated as a scapegoat to relieve legislative pressure on SCDC officials. She alleges she was terminated although SCDC knew she had done nothing wrong and had promoted her subsequent to the incident in question. McNeil has alleged enough to at least raise the issue of a retaliatory termination. The trial court held that even if her allegations were true, she did not state a viable cause of action for a violation of a clear mandate of public policy.

The majority decision, in upholding the trial court, seems to be based on the conclusion that McNeil must allege that she was required to break the law, that her termination was a violation of law, or that the facts of this case are identical to previous cases in this area. I do not interpret the law to be so limited. The issues raised by McNeil are sufficiently novel, and she deserves at least an opportunity to develop the facts.

Obviously, the facts here are not the same as in *Garner* or *Keiger*, but then again if they were then they would not meet the definition of novel. Indeed, both *Garner* and *Keiger* involved different fact situations.

I would reverse the trial court as to this issue only and remand for further proceedings. This in no way implies any evidence has been presented that would justify a cause of action for termination in clear violation of public policy. Further, it could very well be that McNeil's action is dismissed by summary judgment or some other action, but prior decisions by our courts hold she at least deserves an opportunity to develop the facts. Thereafter, the trial court, as is required, should make a ruling as a matter of law if the facts warrant the continuation of McNeil's cause of action.

For the above reasons, I respectfully concur in part and dissent in part.