LOCKEMY, C.J.:
**515 In this wrongful termination action, James Owens appeals a circuit court order granting summary judgment in favor of ADC Engineering, Inc. Owens argues the circuit court erred in holding (1) that his discharge from ADC did not give rise to a cause of action under the public policy exception to the at-will employment doctrine and (2) that his opposition to the construction of a parking garage was not protected political speech under section 16-17-560 of the South Carolina Code (2015). We affirm.
FACTS/PROCEDURAL HISTORY
ADC is an engineering firm located in the Town of Mount Pleasant, SC (Town). The firm employs approximately sixty people and is divided into four engineering divisions-building envelope, civil, structural, and landscaping. In September 2004, ADC hired Owens as a construction administrator. In this capacity, Owens worked primarily in the civil engineering division, where he reviewed designs for commercial projects and ensured the construction complied with plans and specifications. Owens's job responsibilities required him to split time between the office and the field, which allowed some "flexibility" in how he spent his workday. ADC provided Owens with a cell phone and laptop computer for use on the job. According to company policy, employees were allowed "[b]rief or incidental use of office technology for personal, non-business purposes ... as long as it [was] not excessive or inappropriate, and *226 [did] not result in expense or loss to the company."
In 2011, Tyler Flesch, a local real estate developer, began planning the construction of a parking garage near Shem Creek-a popular waterfront dining and recreation area known for its picturesque views and historic charm. In early 2013, the Town council voted to approve construction of the garage and to enter into a parking license agreement with Flesch. Shortly thereafter, Stubbs Muldrow Herin, the architecture firm that Flesch had hired to draw plans for the proposed garage, hired ADC as the project's structural engineer.
**516 Because Owens worked primarily in the civil engineering division, he was not involved in the project through ADC.
After the project became public knowledge in the fall of 2013, it immediately drew the ire of local residents, many of whom were weary of commercial development around Shem Creek. Owens testified he learned of the project at a Town council meeting but was unaware of ADC's role as the structural engineer. Owens soon became a vocal opponent of the Shem Creek project. In the spring of 2014, Owens set up a Facebook page titled "Saving Shem Creek," which he devoted to raising awareness about the project, including writing posts targeted specifically at Flesch. As the project progressed, so did Owens's efforts to oppose it; Owens attended Town council meetings, lobbied council members, circulated a petition asking the Town to rescind its approval of the project, made and distributed "Save Shem Creek" bumper stickers, created a "Save Shem Creek" corporation for which he was also a board member, and sent letters and emails to the Town's mayor. By the summer of 2014, the Shem Creek project had become a prominent, public issue in the Town.
In June 2014, Owens learned his name would appear in a Charleston The Post and Courier article highlighting local opposition to the project. According to Owens, he met with Chris Cook, the partner at ADC in charge of the civil engineering division, "out of courtesy" to tell him of his involvement in the opposition efforts. Owens indicated he was still unaware of ADC's role in the Shem Creek project at the time he spoke to Cook, but wanted to "make certain that they were aware of what [he] did as a private and public citizen." Cook testified he told Owens that ADC had no problem with him voicing his personal opinions as long as it did not harm or reflect negatively on ADC; however, Cook could not recall whether or not he told Owens that ADC was working on the project.
On September 15, 2014, Flesch received a tip informing him that Owens was employed at ADC. Although Flesch was familiar with Owens's efforts to oppose the Shem Creek project, he had not been aware of his affiliation with the engineering firm. After conducting an internet search, Flesch confirmed that Owens was indeed an ADC employee, and on **517 September 16, 2014, Flesch asked Stubbs Muldrow Herin to arrange a meeting with Mark Dillon, the head of ADC's structural engineering division. Later that day, Flesch met with Dillon and informed him that ADC would be terminated from the Shem Creek project unless they fired Owens. Dillon described Flesch as being "very upset, very angry" about the situation, but Dillon declined to fire Owens without first meeting with the other ADC partners.
The next day, the ADC partners met and decided not to terminate Owens. ADC subsequently informed Stubbs Muldrow Herin of their decision. On September 18, 2014, Stubbs Muldrow Herin sent a letter to ADC terminating their contract for the Shem Creek project. That same day, attorneys for Stubbs Muldrow Herin sent an "Evidence Preservation Demand" letter to both ADC and Owens, ordering them to preserve any electronically-stored data, documents, or materials on Owens's ADC devices. Following the receipt of the letter, Owens met with Cook and another partner, Greg Jones, to tell them that he may have used his work computer for matters associated with the Shem Creek project, possibly during work hours. Owens again told the partners that he had been unaware ADC was involved with the Shem Creek project and assured them that had he known, he "would have backed off."[1]
*227 In compliance with the letter, ADC partners directed an IT specialist to search Owens's work computer and cell phone. The search revealed at least a dozen emails Owens had sent during work hours regarding matters related to the Shem Creek project, although most of these emails were sent to his personal email account. ADC also found documents and a power point presentation on Owens's work computer related to the Shem Creek project. Additionally, a review of Owens's cell phone log showed a large volume of text messages and calls he made during the day that ADC believed was related to the project. Finally, ADC learned Owens had recruited another **518 ADC employee to help him prepare a presentation for a Town council meeting.
On September 19, 2014, ADC decided to terminate Owens. Dillon testified ADC fired Owens because it learned he had used company time, equipment, materials, and employees to engage in "an activity that ultimately harmed ADC." In October of 2015, Owens filed a lawsuit against ADC for wrongful termination.[2] Owens alleged that in firing him, ADC violated section 16-17-560 of the South Carolina Code (2015), which makes it unlawful "for a person to ... discharge a citizen from employment or occupation ... because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution and laws of [South Carolina]." ADC answered and counterclaimed, asserting Owens violated both ADC's technology policy and a duty of loyalty to ADC in using company resources to actively oppose a project in which ADC was involved.
On February 16, 2016, ADC moved for summary judgment on Owens's wrongful termination claim. ADC argued Owens could not maintain his cause of action because Owens was an at-will employee and ADC had a right to fire him for violating company policy-specifically, its policy regarding the use of company technology that results in expense or loss to the company. Following a hearing, the circuit court granted ADC's motion. The court found section 16-17-560 did not provide Owens a private cause of action against ADC and regardless, ADC did not violate the statute because Owens's activity did not rise to protected political speech. Owens filed a motion to alter or amend, which the circuit court denied. This appeal followed.
STANDARD OF REVIEW
Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When the circuit court grants summary judgment on a question of law, we review the ruling de novo.
**519 Town of Summerville v. City of N. Charleston , 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." Quail Hill, LLC v. Cty. of Richland , 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citation omitted).
PUBLIC POLICY EXCEPTION
"South Carolina has a strong policy favoring at-will employment." Taghivand v.Rite Aid Corp. , 411 S.C. 240, 243, 768 S.E.2d 385, 386 (2015). "In South Carolina, employment at-will is presumed absent the creation of a specific contract of employment." Barron v. Labor Finders of S.C. , 393 S.C. 609, 614, 713 S.E.2d 634, 636 (2011). "[A]n at-will employee may be terminated for any reason or no reason at all." Id . However, "[w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." Ludwick v. This Minute of Carolina, Inc. , 287 S.C. 219, 337 S.E.2d 213 (1985).
Under the "public policy exception" to the at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory *228 termination of the at-will employee in violation of a clear mandate of public policy. Id . at 225, 337 S.E.2d at 216. In Ludwick, our supreme court recognized a cause of action in tort for the discharge of an at-will employee when the discharge constituted a violation of public policy. 287 S.C. at 215, 337 S.E.2d at 216. Under the rule outlined in Ludwick , "the public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." Moshtaghi v. The Citadel , 314 S.C. 316, 323, 443 S.E.2d 915, 919 (Ct. App. 1994).
In Culler v. Blue Ridge Elec. Co-op., Inc. , our supreme court expanded the public policy exception elucidated in Ludwick to include instances when an employee's discharge is itself a violation of the law. 309 S.C. 243, 246, 422 S.E.2d 91, 92-93 (1992). In that case, Culler alleged he was discharged for refusing to donate to a political action fund that supported campaigns favorable to utility cooperatives. 309 S.C. at 246, 422 S.E.2d at 93. Although our supreme court found evidence **520 that Culler was fired because of his "bad attitude," it held that under Ludwick , an employee could maintain a cause of action for wrongful termination against his employer if he could prove he was fired because of his political beliefs in violation of section 16-17-560, which is a legislatively defined "crime against public policy." Id .
Thus, the public policy exception clearly applies in cases in which either: (1) the employer requires the employee to violate the law; or (2) the reason for the employee's termination itself is a violation of criminal law. Ludwick , 287 S.C. at 215, 337 S.E.2d at 216; Culler , 309 S.C. at 246, 422 S.E.2d at 92-93. Although our supreme court has made clear the exception "is not limited to these situations," it has not explicitly recognized any others. Barron , 393 S.C. at 614, 713 S.E.2d at 637.
"The determination of what constitutes public policy is a question of law for the courts to decide." Id . at 617, 713 S.E.2d at 638. We have been cautioned to "exercise restraint when undertaking the amorphous inquiry of what constitutes public policy." Taghivand , 411 S.C. at 244, 768 S.E.2d at 387. "The primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." Id . (citing Citizens' Bank v. Heyward, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925) ). This court has held that the General Assembly's use of the phrase "[t]he public policy of South Carolina is" constitutes a clear declaration of legislative intent to define the public policy of the State. Donevant v. Town of Surfside Beach , 414 S.C. 396, 415-16, 778 S.E.2d 320, 331 (Ct. App. 2015), aff'd , 422 S.C. 264, 811 S.E.2d 744 (2018) (holding the termination of an employee for enforcing a building code under section 6-9-10 of the South Carolina Code (2004 & Supp. 2017) was a violation of a clear mandate of public policy).
VIOLATION OF PUBLIC POLICY
Section 16-17-560 provides in part:
It is unlawful for a person to ... discharge a citizen from employment or occupation .. because of political opinions or the exercise of political rights and privileges guaranteed to **521 every citizen by the Constitution and laws of the United States or by the Constitution and laws of this State.
In the circuit court's order dismissing Owens's wrongful termination claim, it wrote section 16-17-560"did not give rise to a private cause of action by Owens against ADC, and Owens'[s] termination did not otherwise violate the statute." Owens contends this holding was error because pursuant to Culler , section 16-17-560 does provide a private cause of action against an employer for wrongful termination. Furthermore, Owens argues summary judgment was inappropriate because he raised a question of fact as to whether ADC terminated him for exercising his constitutional right to free speech, which would be a violation of a clear mandate of public policy under Culler and section 16-17-560.
While we agree with Owens that under limited circumstances a violation of section 16-17-560 supports a cause of action against an employer for wrongful termination, for *229 the reasons below, we do not believe those considerations have been met in this case.
Viewing the evidence in the light most favorable to Owens, we believe he fails to raise a genuine issue of material fact as to whether he was discharged for exercising his constitutional rights in violation of a clear mandate of public policy as set forth in section 16-17-560. See Rule 56, SCRCP ; Quail Hill, LLC v. Cnty. of Richland , 387 S.C. at 235, 692 S.E.2d at 505. It is undisputed both the Federal and South Carolina Constitutions provide for freedom of speech, of assembly, and the right to petition the government for redress of grievances. U.S. Const. amend. I ; S.C. Const., art. I, § 2. Furthermore, it is not disputed that Owens's use of the political process to actively oppose the Shem Creek project was within his rights as a private citizen. We do not believe, however, that Owens's decision to enjoy those rights was the reason for his termination; rather, the evidence shows Owens was discharged because he used company equipment, materials, and time to engage in an activity that was a violation of company policy and unquestionably detrimental to ADC.
ADC's technology policy allowed for "[b]rief or incidental use of office technology for personal, non-business purposes ... as long as it [was] not excessive or inappropriate, and **522 [did] not result in expense or loss to the company ." (emphasis added). ADC had no issue with Owens exercising his right to engage in speech opposing the Shem Creek project-or other projects that ADC was working on-as long as he did not do it during work hours or with work equipment. Yet, the uncontroverted testimony was that Owens spent time at work actively opposing a project that ADC had a financial stake in and also disregarded a directive from ADC's management to keep ADC away from controversy. We believe ADC was within its rights to discharge an at-will employee for a violation of rules that brought economic harm to the company. See Taghivand , 411 S.C. at 243, 768 S.E.2d at 386 ("South Carolina has a strong policy favoring at-will employment."); Barron , 393 S.C. at 614, 713 S.E.2d at 636 ("[A]n at-will employee may be terminated for any reason or no reason at all."). Accordingly, we find Owens's termination violated neither section 16-17-560 nor a clear mandate of public policy.
CONCLUSION
Based on the foregoing, the decision of the circuit court is
AFFIRMED.
THOMAS and GEATHERS, JJ., concur.

ADC does not directly dispute Owens's lack of knowledge regarding the company's involvement in the Shem Creek project; however, at least one partner testified there is an internal procedure whereby any employee may quickly search to see if ADC is working on a particular job.

Owens also brought a defamation action against a local radio station and one of its hosts who reported on the Shem Creek project. That action is not a subject of this appeal.