**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

James Earl Tegeler, Appellant,

v.

Charlotte Collier, Hannah Elizabeth Collier, Linda Smith and Northgate Baptist Church, Respondents.

Appellate Case No. 2020-001525

———————

Appeal From Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-325
Heard June 06, 2023 – Filed October 04, 2023

———————

**AFFIRMED**

———————

Deborah Dickson Davis, of Dickson Davis Law Firm, LLC, of Greenville, for Appellant.

Daniel Roper Hughes, of Duggan & Hughes, LLC, of Greer, for Respondents Hannah Elizabeth Collier and Linda Smith.

Jeanmarie Tankersley, of Clawson & Staubes, LLC, of Greenville, for Respondent Charlotte Collier.

Steven Michael Nail, of Ogletree Deakins Nash Smoak &
Stewart, PC, and Charles Edgar McDonald, III, both of
Greenville, for Respondent Northgate Baptist Church.

———————

**PER CURIAM:** James Earl Tegeler claims Northgate Baptist Church (Church)
improperly terminated his employment as music director due to the allegedly
defamatory reports of Hannah Collier (Daughter), Charlotte Collier (Mother), and
Linda Smith (Grandmother) (collectively, Respondents).  He argues the circuit court
erred in (1) dismissing his claims and/or granting judgment to Respondents;
(2) denying him the opportunity to amend his complaint; and (3) denying his Rule
60(b), SCRCP motion.  We affirm.

In June 2016, the Church hired Tegeler to oversee its music program, including the
Church worship team.  In June 2017, Tegeler met Daughter at a Church member's
birthday party.  Daughter turned eighteen in July and joined the worship team in
August.  Thereafter, Tegeler, a widower in his fifties, entered into what he describes
as a "father figure," "big brother," or "mentor relationship" with Daughter.

On March 11, 2018, Tegeler hosted a birthday party for his son and invited Daughter
and her family.  While at dinner, Daughter had her phone out at the table; this
irritated Tegeler, who thought it was rude.  When he "attempted to redirect" her
behavior, Daughter became upset.  This interaction, in addition to others, seemed
strange to Daughter's family.

The following day, Daughter and Mother reported to the Church's senior pastor, Dr.
Barry Jimmerson, that Tegeler had an inappropriate relationship with Daughter.
Although Daughter specifically told Dr. Jimmerson that the relationship was neither
sexual nor romantic, Tegeler claims Dr. Jimmerson misinterpreted Daughter's
allegations "as being sexual or romantic in nature."

During a Church staff meeting the day after Mother and Daughter met with Dr.
Jimmerson, Tegeler reported to the Church that his relationship with Daughter had
deteriorated, and he showed staff members a text message from Daughter that he
believed demonstrated their mentoring relationship.  After hearing Tegeler's report
and reviewing the "mentoring" message, Dr. Jimmerson and Laurel Shaler, who
chaired the Church personnel committee, met with Tegeler to discuss his interactions
with Daughter.  Tegeler claims he "shared a text message" from Daughter
"expressing daughterly affection and respect toward [Tegeler] as a mentor" and Dr.

Jimmerson told him he did not believe the text message or relationship "warranted the allegations that [Tegeler] had inappropriate relations with [Daughter]."[1]

Tegeler further alleges that Shaler believed the text message was inappropriate and that she initiated an "unauthorized investigation." During this inquiry, Shaler discovered Tegeler had concerning communications with other young women at the Church. Shaler was concerned by Daughter's text message and because Tegeler "texted a young girl during a service" and "asked a young girl on vacation." Shaler reported her concerns to the personnel committee, and the committee voted unanimously to terminate Tegeler's employment with the Church.

On April 10, 2018, Tegeler went to the Church conference room for what he believed would be a regularly scheduled staff meeting. However, only Dr. Jimmerson (Tegeler's supervisor), Shaler, and Warren Peden, a Church lay leader, were present. Tegeler claims that when he entered the conference room and closed the door, it automatically locked behind him. Dr. Jimmerson and Peden accused Tegeler of having an inappropriate relationship with Daughter, and Shaler informed him of the personnel committee's unanimous vote to terminate his employment. Shaler then presented Tegeler with a Separation Agreement and Release of Claims (the Agreement), in which the Church offered to pay Tegeler $2,600 in exchange for a release of any claims he might have against the Church.

Tegeler contends he asked to leave the meeting and for additional time to review the proposal but claims Shaler told him he could not leave until he signed. He further alleges that Peden told him that if he did not sign the Agreement, the Church would bring him before the congregation, present the allegations, and allow the congregation to determine whether Tegeler should be fired. Although Tegeler negotiated a higher severance payment of $5,200, signed the Agreement, and has yet to return the funds, he now claims he signed the Agreement only because he felt threatened.

Tegeler subsequently filed this action against Daughter, Mother, Grandmother, and the Church. Against the Church, Tegeler brought claims for false imprisonment; defamation; fraud in the inducement; negligent misrepresentation; negligent hiring,

---

[1] At oral argument, Tegeler's counsel acknowledged that Mother and Daughter reported only one concern to Dr. Jimmerson: that the relationship was "inappropriate." Only Tegeler has referenced "inappropriate relations"; his attorney conceded that this was an error in the complaint's terminology.

supervision, and retention of employees; intentional infliction of emotional distress; negligent infliction of emotional distress; wrongful termination; and civil conspiracy. Against Daughter, Mother, and Grandmother, Tegeler brought claims for defamation; intentional infliction of emotional distress; negligent infliction of emotional distress; and civil conspiracy. Tegeler's complaint is quite factually detailed, and he claims he has suffered monetary damages and emotional distress.

The Church moved to dismiss pursuant to Rule 12(b)(6), SCRCP, arguing Tegeler released any claims against the Church when he signed the Agreement; the Church attached the Agreement as an exhibit to its motion. Mother answered, moved to dismiss, and filed a Rule 12(c), SCRCP motion for judgment on the pleadings. Daughter and Grandmother answered jointly, moved to dismiss under Rules 12(b)(6) and 12(c), and asserted several affirmative defenses.

Prior to the circuit court's hearing, Respondents filed supporting memoranda. Tegeler responded with his own opposition memo and attached several exhibits, including affidavits and copies of text and Snapchat messages between Tegeler and Daughter. Respondents then filed their own excerpts from Tegeler and Daughter's messaging. No party objected to the circuit court's consideration of these submissions in the context of the Rule 12(b) and Rule 12(c) motions.

At the motions hearing, Tegeler's counsel went into great factual detail when explaining the background of the case and referenced the messages between Tegeler and Daughter. By Form 4 orders entered that same day, the circuit court granted Grandmother and Daughter's Rule 12(b)(6) and 12(c) motions, Mother's Rule 12(c) motion, and the Church's Rule 12(b)(6) motion; the circuit court's formal orders followed on September 8, 2020.

## I. Judgment on the Pleadings and Failure to State a Claim

"Whether reviewing a grant of summary judgment or a judgment on the pleadings, we apply the same legal standards as the trial court." *Ziegler v. Dorchester County*, 426 S.C. 615, 619, 828 S.E.2d 218, 220 (2019). "A judgment on the pleadings shall be granted 'where there is no issue of fact raised by the complaint that would entitle the plaintiff to judgment if resolved in plaintiff's favor.'" *Home Builders Ass'n of S.C. v. Sch. Dist. No. 2 of Dorchester Cnty.*, 405 S.C. 458, 460, 748 S.E.2d 230, 231 (2013) (quoting *Sapp v. Ford Motor Co.*, 386 S.C. 143, 146, 687 S.E.2d 47, 49 (2009)).

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 12(c), SCRCP.

## A. Defamation

> To prove defamation, the plaintiff must show: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm."

*Kennedy v. Richland Cnty. Sch. Dist. Two*, 428 S.C. 98, 114, 833 S.E.2d 414, 423 (Ct. App. 2019) (quoting *Williams v. Lancaster Cnty. Sch. Dist.*, 369 S.C. 293, 302–03, 631 S.E.2d 286, 292 (Ct. App. 2006)).

Here, judgment on the pleadings was appropriate because Tegeler's detailed complaint does not raise an issue of fact that could possibly entitle him to relief. In his own complaint, Tegeler claims he was Daughter's mentor and she was a vulnerable young woman from "a broken home." He admitted to giving her financial gifts and inviting her on trips with his family. He also acknowledged discussing highly personal matters with Daughter, though he insists these discussions took place in the context of his "mentoring."

More significantly, Tegeler admits that Daughter and Mother told Dr. Jimmerson the relationship was not romantic or sexual and that Dr. Jimmerson told him he did not believe the relationship was romantic or sexual. Thus, even when we view all allegations in the light most favorable to Tegeler (as we must), this admission warrants judgment on the pleadings as to Mother and Daughter.

Other than vague, hearsay references to an "inappropriate relationship," Tegeler fails to identify in his complaint any specific defamatory statement by Grandmother. *See McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013) (holding the circuit court properly dismissed a defamation action because "McNeil did not allege any of SCDC's statements were unprivileged, and she did not set forth with any specificity what the alleged false statements were. She also did not allege any of the statements were published to a third party or that SCDC made the alleged statements. Additionally, she did not assert to whom SCDC made the alleged statements."). Accordingly, even when viewed in the light most favorable to the plaintiff, the allegations in Tegeler's complaint do not entitle him to relief.

However, even if Tegeler's complaint could somehow survive a motion for judgment on the pleadings, summary judgment in favor of Respondents would be proper based on the exhibits Tegeler himself submitted to the circuit court. Tegeler, Daughter, and Grandmother all filed exhibits prior to the circuit court's August 18, 2020 hearing. On August 17 at 10:48 a.m., Daughter and Grandmother filed a memorandum in support of their motions. On August 17 at 3:54 p.m., Tegeler filed a memorandum opposing Respondents' motions and attached voluminous exhibits, including many concerning messages between Tegeler and Daughter. At 4:42 p.m., Daughter filed her own affidavit and exhibits, which included additional text and Snapchat messages between the two. At the circuit court's hearing the next day, no party objected to the consideration of these filings. Thus, we find the parties consented to the consideration of these additional matters.

Considering the text and Snapchat messages in the record, there cannot possibly be a genuine dispute as to the truthfulness of any statement that Tegeler's relationship with Daughter was inappropriate. The messages reveal Tegeler called Daughter his "princess," his "sweetie pie," and his "cutie pie." Among other unsuitable statements that we decline to detail here, Tegeler told Daughter he fell asleep thinking about her. The messages also showed Tegeler gave Daughter financial gifts and made comments that she found confusing in the context of a mentoring relationship between a worship leader in his fifties and an eighteen-year-old female member of his worship team.[2]

---

[2] As our rulings here are dispositive, we decline to address Respondents' additional sustaining grounds, including the argument that Mother and Daughter's statements to Dr. Jimmerson were conditionally or qualifiedly privileged. *See Murray v. Holnam, Inc.*, 344 S.C. 129, 139–40, 542 S.E.2d 743, 748 (Ct. App. 2001) ("In a defamation action, the defendant may assert the affirmative defense of conditional or qualified

## B.  Intentional Infliction of Emotional Distress

> To state a claim for intentional infliction of emotional distress, a plaintiff must show (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Bergstrom v. Palmetto Health All.*, 358 S.C. 388, 401, 596 S.E.2d 42, 48 (2004).

Tegeler's complaint wholly fails to state a proper claim for intentional infliction of emotional distress.  Mother and Daughter's reporting of the inappropriate relationship to their pastor and Tegeler's supervisor, Dr. Jimmerson, was not "so extreme and outrageous as to exceed all possible bounds of decency" that it "must be regarded as atrocious and utterly intolerable in a civilized community."  *See id.* at 401, 596 S.E.2d at 48–49.  The circuit court properly dismissed this claim against Grandmother and the Church as well.

## C. Negligent Infliction of Emotional Distress

South Carolina caselaw recognizes negligent infliction of emotional distress in limited circumstances.  *See, e.g.*, *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 582–83, 336 S.E.2d 465, 467 (1985) (recognizing negligent infliction of emotional distress in the "bystander" context); *Boan v. Blackwell*, 343 S.C. 498, 502, 541 S.E.2d 242, 244–45 (2001) (stating a plaintiff may recover for mental anguish that accompanies a physical injury); *Strickland v. Madden*, 323 S.C. 63, 67, 448 S.E.2d 581, 584 (Ct. App. 1994) (recognizing potential recovery for negligent infliction

---

privilege.") (quoting *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 514 S.E.2d 126 (1999))); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting a reviewing court need not address remaining issues when disposition of a prior issue is dispositive).

of emotional distress when emotional trauma proximately causes a plaintiff's injury). Tegeler did not claim he witnessed a death or serious injury nor does he claim he experienced physical injury as a result of emotional trauma. For these and other reasons, the circuit court properly found Tegeler's complaint failed to state a claim that might entitle him to relief.

## II. Release of Claims Against the Church

"A release is a contract and contract principles of law should be used to determine what the parties intended." *Ecclesiastes Prod. Ministries v. Outparcel Assocs.*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007). "In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." *Id.* "If a contract's language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and its language determines the instrument's force and effect." *Id.* at 499, 649 S.E.2d at 502.

"Duress is a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition." *Willms Trucking Co. v. JW Const. Co. Inc.*, 314 S.C. 170, 178, 442 S.E.2d 197, 202 (Ct. App. 1994). "The central question when determining whether a contract was executed under duress is whether, considering all the surrounding circumstances, one party to the transaction was prevented from exercising his free will by threats or the wrongful conduct of another." *Gainey v. Gainey*, 382 S.C. 414, 428, 675 S.E.2d 792, 799 (Ct. App. 2009).

> In order to establish a claim for fraud in the inducement to enter a contract, a party must establish the following by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Turner v. Milliman*, 392 S.C. 116, 122, 708 S.E.2d 766, 769 (2011).

In dismissing Tegeler's claims against the Church, the circuit court noted the Church attached a copy of the Agreement with its motion, Tegeler did not object to

the court's consideration of the Agreement, and Tegeler based some of his own arguments on the Agreement's language. Therefore, the circuit court found it could consider the Church's motion to dismiss as a motion for summary judgment, and noted that under either standard, Tegeler's claims failed. We find the circuit court properly analyzed the Church's motion as one for summary judgment after all of the parties attached exhibits to their filings, relied on the filings at the motions hearing, and did not object to the court's consideration of the filings.

The evidence in the record establishes Tegeler negotiated an increase in the severance pay he received in conjunction with signing the Agreement because the original amount is crossed out and a larger amount is written in its place. At the circuit court's hearing and at oral argument before this court, Tegeler admitted he did not return the severance pay to the Church; it seems he views this payment as a partial payment for his alleged damages.

Further, although Tegeler claims he was under duress because he found Peden—a lay leader in the Church—threatening, the record establishes otherwise. Tegeler texted Peden on April 11, 2018, demanding an apology after Peden reported his termination at choir practice. Tegeler wrote, "Bottom line is, you said yesterday no details will be given out and what you said was too much information. You need to apologize for saying things you said yesterday you would not say. This is unacceptable. . . . I am disappointed in you as a leader in the church." We find this text message—along with Tegeler's negotiation of a higher severance figure and retaining of the funds—disposes of any claim that he felt "threatened" or acted under duress in negotiating the Agreement.

Additionally, the circuit court properly found the Agreement's language bars any recovery against the Church. The Agreement states, in pertinent part:

> In exchange for the Company's agreement to provide the above payment, Employee agrees not to make any claims or demands or to commence any lawsuits against the Company on any matters arising from or related in any way to the Employee's employment with or termination from the Company.
>
> This includes, but is not limited to, a release of any and all rights arising under any state or federal constitution, statute, law, rule, regulation, or common law principle of tort, contract, or equity.

In further consideration of the foregoing, receipt of which is hereby acknowledged, Employee. . . forever discharges Company, and its predecessors, insurers, indemnitors, purchasers, successors and assigns, from all manner of actions, causes of action, suits, debts, accounts, judgments, claims and demands whatsoever, in law and/or in equity arising out of or in any way related to Employee's hiring, employment, wages, commissions, bonuses, benefits, compensation, request for or to return from leave of absence, demotion, resignation, discharge, termination, severance or termination benefits, and/or terms and conditions of employment; any and all causes of action for harassment, retaliation, breach of contract, breach of implied contract, tortious interference with contract, wrongful transfer or demotion, wrongful termination, fraud, negligence, libel or slander, intentional or negligent infliction of emotional distress, breach of confidentiality, invasion of privacy, or any other rights, claims, or causes of action arising under any state or federal constitution, statute, law, rule, regulation, or common law principle of tort, contract, or equity.

. . . .

The Intent of this Agreement is to fully and finally resolve all claims and possible claims against the Company that are waivable whether legal or equitable. However, it is understood that the Employee is not releasing or waiving any rights or claims which may arise after this Agreement is executed, any claims for the sole purpose of enforcing Employee's rights under this Agreement, or any claims which by law cannot be waived. . . .

Tegeler claims some of Peden's statements occurred after the execution of the Agreement and, thus, are not barred. However, these allegedly defamatory statements—even if we assume for procedural purposes that they occurred as

Tegeler claims[3]—were made by a Church lay leader who is not a Church employee and not a party to this action.

## III. Opportunity to Amend

Citing *Skydive Myrtle Beach, Inc. v. Horry County*, 426 S.C. 175, 179, 826 S.E.2d 585, 587 (2019), Tegeler argues the circuit court should have given him the opportunity to amend his complaint instead of dismissing it or granting judgment on the pleadings. In *Skydive*, our supreme court explained, "When a trial court finds a complaint fails 'to state facts sufficient to constitute a cause of action' under Rule 12(b)(6), the court should give the plaintiff an opportunity to amend the complaint pursuant to Rule 15(a) before filing the final order of dismissal." *Id*. Here, the circuit court properly found any amendment of this complaint would be futile due to Tegeler's own detailed allegations and the contents of his text and Snapchat messages with Daughter.[4] *See id.* at 182, 826 S.E.2d at 589 ("In rare cases . . . a trial court may deny a motion to amend if the amendment would be clearly futile.").

## IV. Rule 60(b), SCRCP

Tegeler next argues the circuit court erred in failing to set aside its judgment under Rule 60(b) because Mother's counsel called him a "predator" at the circuit court hearing. We disagree.

---

[3] When Tegeler sent Peden the text message expressing his disappointment regarding Peden's report to the choir, Peden responded that Tegeler's information was incorrect. He further noted, "I have what I said recorded on my phone."

[4] Tegeler did submit an affidavit from a fellow church member who claimed her friend Judy (she did not reveal Judy's last name) told her that Grandmother had accused Tegeler of having an inappropriate relationship with Daughter. But Tegeler did not submit an affidavit from Judy or anyone else with firsthand knowledge of any defamatory comments Grandmother allegedly made. In any event, we agree with the circuit court that "after reviewing these affidavits in addition to the numerous fact specific allegations of the Complaint, it is clear that any amendment to this Complaint would be futile." *See also Kennedy*, 428 S.C. at 130, 833 S.E.2d at 431 ("Truth of a statement is a defense to defamation.").

Tegeler seeks relief under Rule 60(b)(3), which provides, "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . fraud, misrepresentation, or other misconduct of an adverse party." However, the circuit court addressed Tegeler's filing as a Rule 59(e) motion to alter or amend because Tegeler filed it within ten days of entry of the orders; additionally, there simply are no arguable 60(b) grounds here. Even if a Rule 60(b) motion were procedurally appropriate, Tegeler's argument that the judgment should be set aside due to misconduct lacks merit because the transcript establishes that Mother's counsel did not call Tegeler "a predator." She did reference the "predatory behavior" suggested by the contents of several of Tegeler's text messages with Daughter, but this description was neither actionable nor in any way inappropriate in the context of the matters argued at the hearing. It certainly did not constitute misconduct or fraud, nor was it a misrepresentation.

For the reasons set forth above, the orders of the circuit court are

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**